No. 77.—SEABORN JONES, plaintiff in error, *vs.* THE WATER LOT COMPANY OF COLUMBUS, defendants in error.

[2.] In trespass, if the jury find for the *defendant*, when it is conceded that the plaintiff is entitled to recover nominal damages, another trial cannot be avoided by tendering to the plaintiff one dollar and costs.

[1.] Every riparian proprietor, above the ebb and flow of tide water, is entitled to the land covered by the water to the middle thread of the river; on the Chattahoochee, this extends to the boundary of the State on the Western bank.

[3.] In an action of trespass, the defendant may claim the *locus in quo* to be his soil and freehold, or the soil and freehold of a third person, by whose authority he entered.

Trespass, in Muscogee Superior Court. Tried before Judge WORRELL, at December Term, 1855.

Seaborn Jones brought suit against the Water Lot Company of the City of Columbus, for a trespass, in overflowing the water wheels of plaintiff's mill, by erecting and raising a dam below, and causing the water to flow back. Plaintiff claimed under a grant from the State of Georgia, and proved on the the trial the trespass laid. It was also proved that plaintiff's own mill-dam, extended across the river; and without extending across, the mill would be worthless.

The Court charged the Jury, that if they believed that the plaintiff's dam did not extend across the river, his mill was valueless, and he could not recover for overflowing his wheels; and, if they believed it did extend across the river, then it

was erected on land not conveyed by the State to him, and he had no right to recover, except nominal damages for over-flowing his land.

The Court declined to charge the following requests:

1. That if plaintiff erected his dam on the land belonging to the State, he was accountable only to the State, and that it did not justify defendant's trespass.

2. That the plaintiff could recover for a trespass to property in his possession.

3. That the charter of the defendants did not authorize the erecting of a dam and the trespass on plaintiff.

The charge given, and the refusals to charge, are the errors assigned in this Court.

A motion was made for a new trial, on the ground that the verdict was contrary to the charge of the Court, in this: that the Court charged that they should give the plaintiff nominal damages, when the Jury found for defendants. The Court ordered a new trial, unless defendant would pay the plaintiff nominal damages and the cost; whereupon, defendants tendered the plaintiff one dollar for damages, and seven dollars and fifty cents costs, which he declined to receive.—The Court refused a new trial, and this is also assigned as error.

S. JONES, for plaintiff in error,

J. JOHNSON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The plaintiff is manifestily entitled to a new trial in this case. It was not disputed but that he was entitled to recover nominal damages, at least, for the overflowing of his land by the erection of the defendant's dam; and so the Court charged the Jury. A verdict was, notwithstanding, rendered for the defendant; whereupon, the presiding Judge put the defendants upon terms, namely: that if they would

pay nominal damages and cost, a new trial would not be granted. One dollar as damages, and seven dollars and fifty cents costs, being tendered in open Court and refused, a new trial was refused.

The Court had no right to impose such terms. It is not unusual, where a verdict has been recovered for too much, to require the *plaintiff* to remit the excess to avoid another trial; but we know of no practice to justify the case before us. Indeed, it is obviously against principle. What right has the Court to determine what the nominal damages shall be? Whether one dollar or five dollars?

But, waiving this view, there is another objection to this proceeding, which is insuperable. The plaintiff was entitled to a verdict, because it established his right; and the Court had no power to deprive him of this advantage; one which would serve to answer many valuable purposes.

[2.] But we go further : In our judgment, the law of the case, generally, was misapprehended. In *Young vs. Calhoun & Harrison*, (6 *Ga. Rep.* 130, 141,) this Court held, that grants of land, bounded on rivers above tide-water, or where the tide does not ebb and flow, carry the grantee to the middle of the river. And that in grants bounded by the Chattahoochee, this riparian right extended to the opposite bank; that, and not the river itself, being the western boundary of Georgia.

And we see nothing to change or modify that opinion. True, the plaintiff's fraction, No. 1, is bounded by the Chattahoochee River ; but by construction of law, it reaches to the opposite shore, unless there are expressions in the terms of the grant, taken in connection with the situation and condition of the land granted, which clearly indicate the intention of the State to stop at the eastern edge or margin of the river. We see in the grant to Col. Jones, the plaintiff, no reservation or restriction, express or necessarily implied, which controls the operation of the general presumption in favor of riparian proprietors, and which makes his particular grant an exception to the general rule.

And whether the majority of the Court were right, in *Howard vs. Ingerrold*, (13 *Howard's Rep.* 381,) in holding that the true boundary between Georgia and Alabama, was the top of the high western bank of the Chattahoochee River, where vegetation begins to grow, and leaving the bed of the river and western shelving shore within the limits and jurisdiction of Georgia; or Mr. Justice *Nelson* and the minority, held the better opinion, in making the ordinary water-mark the true western boundary of this State, Col. Jones was ·equally entitled to construct his dam across the river.

But suppose Col. Jones, as a riparian grantee, was restricted to the thread or middle of the stream; still, was he ·not entitled to maintain trespass against the defendants? They rely upon a charter from the State, and a conveyance from the City Council made in pursuance thereof. The Act of Incorporation of 1845 has been read, but the deed or deeds made to the Water Lot Company, by the City Council, have not been produced. We are judicially ignorant, therefore, of their contents. According to the Act of 1845, the dam of the Water Lot Company was to be built in pursuance of the contract made with the Council. Suppose it should turn out to be true, as represented by Col. Jones to be the case, that these conveyances only authorize a dam to be constructed five feet high, which would not interfere with plaintiff's mill, and they have erected one between seven and ten feet, according to the proof in the record, and by reason of said excess the plaintiff's water-wheel is overflown, is it not apparent that the charter from the State and the deeds from the Council, would constitute no justification for the damage done to plaintiff's property?

[3.] The defendant in trespass may plead *liberam tenementum*, not only in himself, and thereby prevent a recovery, but likewise in another, with whom he is in privity. And some of the authorities go so far as to say, that the defendant may make this plea available to himself, by procuring the authority of him who owns the freehold, to plead in bar of the plaintiff's possessory right. (2 *Salk.* 453. 7 *T. R.* 355. 1

*Saund.* 299—*b, note.*) But no such authority has been delegated by the State to these defendants. At any rate, none such has been produced.

In any view of this case, then, the judgment of the Court below was erroneous, and a new trial must be granted.