## James M. Motley *vs.* Cyrus Sargent.

Suffolk.   November 19. — December 28, 1875.   Colt, J., absent.

A grant of land bounded by a way conveys the soil to the centre line of the way, unless a different intention appears by the other parts of the deed, or by the character of the locality to which the description is to be applied.

Land was conveyed bounded northerly on a street, seven feet four inches; easterly on another street, thirty-five feet four inches; southerly on the land of C., seventeen feet five inches; and "westerly on a passage way," thirty-four feet ten inches, "or however otherwise bounded, with the buildings thereon standing, and the free use and privilege of said passage way in common with myself, my heirs and assigns forever, reserving to myself, my heirs and assigns forever, a mutual privilege in the well and pump standing at the northwesterly corner of the above described land." By the same deed the grantor conveyed his interest in a strip of land adjoining the north end of the land above described, which had been taken by the town to widen the street. By a plan afterwards prepared, the accuracy of which was not questioned, the northerly line varied from that given in the deed, the southerly line of the lot was only fifteen feet three inches, excluding the passage way, and the passage way at that point was four feet wide. *Held*, that the grantee took to the middle of the passage way.

Tort for breaking and entering the plaintiff's close, being a passage way about four feet wide, bounded northerly on Elm Street in Boston, and lying between other land of the plaintiff on the west and land of the defendant on the east.

At the trial in the Superior Court, before *Wilkinson*, J., the defendant admitted acts done by him on the land, not authorized by an easement in the passage way, and the only issue was whether

the plaintiff was the owner in fee of the whole of the passage way, or whether the defendant was the owner in fee of one half thereof.

In 1812, Zebulon Clapp was the owner of the parcels of land now owned by the plaintiff and by the defendant, with the passage way in question lying between them. The plaintiff claimed title through the following conveyances:

In 1818, Clapp's executor conveyed to William W. Motley a parcel of land bounded northerly on Elm Street, twenty-two feet; easterly on a passage way, thirty-seven feet eight inches; southerly on land of the heirs of Isaac Cutter, twenty-one feet ten inches; and westerly on land late of Andrew Oliver, there measuring forty feet; with the free use of the well and pump on land conveyed by Zebulon Clapp to Amos Binney, on the east side of said passage way, paying one half of the expense of keeping the same in repair. It was admitted that said deed duly conveyed the estate described therein; and that by a subsequent conveyance the estate came to one Mary Motley.

In 1853 and 1855, the heirs of Zebulon Clapp quitclaimed their right, title and interest in and to said passage way to Mary Motley, whose heirs, in 1864, conveyed the passage and the lot on the west, by one description, to the plaintiff.

The defendant claimed title to the fee of one half of the passage way through the following conveyances:

In 1812, Zebulon Clapp conveyed to Amos Binney a parcel of land " bounded northerly on Elm Street, seven feet four inches; easterly on Brattle Street, there measuring thirty-five feet four inches; southerly on land of the heirs of Isaac Cutter, seventeen feet five inches; and westerly on a passage way, there measuring thirty-four feet ten inches; or however otherwise bounded, with the building thereon standing, and the free use of said passage way in common with myself, my heirs and assigns, reserving to myself, my heirs and assigns forever, a mutual privilege in the well and pump standing at the northwesterly corner of the above described land, which well shall never be built upon without the consent of me the said Clapp, or my heirs and assigns; hereby also granting unto said Binney all my right, title and interest in or to a small strip of land adjoining the north end of the land above described, taken by the town to widen Elm Street."

In 1848, the heirs of Binney conveyed to Atkins A. Clark "that lot of land bounded northerly by Elm Street, seven feet seven inches; easterly by Brattle Square, thirty-four feet; southerly by a line through the centre of the brick partition wall, fifteen feet three inches; and westerly by a passage way, thirty-three feet ten inches, be all or any of said measurements more or less, together with the free use and privilege of said passage way. . . . . Said lot of land is shown on a plan made by Alexander Wadsworth, March 10, 1848, a copy whereof is hereon indorsed." This plan corresponded to the measurement in the deed.

In 1858, Clark conveyed to the defendant by the same description as in the deed of the heirs of Binney to him.

The judge ruled that the defendant was the owner of the fee of one half of the passage way, and ordered judgment for the defendant; and the plaintiff alleged exceptions.

*C. R. Train & F. S. Hesseltine*, for the plaintiff. The intent of the parties, that the grant of the lot on the east of the passage way should extend only to the side of the way, appears by the careful and minute description, in feet and inches, of the front line of the lot on Elm Street, between Brattle Square and the way. This measurement indicates that a great degree of accuracy was sought and used by the parties to the deed. The shortness of the line, seven feet four inches, which takes in no part of the passage way, precludes the idea that it was the intention to convey nine feet eight and three fourths inches to the centre of the way; and where the measurement, by feet and inches, indicates great care, and the line is as short as this, it is evident that so great a mistake could not have been made. The general rule, that when known monuments are referred to as boundaries they must govern, yields when it is evident that no mistake in the measurement can reasonably be supposed to have been made. *Davis* v. *Rainsford*, 17 Mass. 207. *Tyler* v. *Hammond*, 11 Pick. 193. *Brainard* v. *Boston & New York Central Railroad*, 12 Gray, 407. *Cole* v. *Haynes*, 22 Vt. 588.

The intent to convey only to the side of the passage way also appears by the words following the description of the lot, "and the free use and privilege of said passage way in common with myself, my heirs and assigns forever." By necessary implica-

tion, this grant of an easement over the way excludes any greater title to it, and makes clear the intention to reserve the fee.

It also appears in the words "reserving to myself, my heirs and assigns forever, a mutual privilege in the well and pump," &c. This makes clear the intention to grant the fee of land on the east of the way, reserving an easement in it as to the well there situated, and to retain the fee of the passage, and grant an easement over it. The grantor grants the fee of one, reserving an easement, and grants an easement over the other, reserving the fee. *Codman* v. *Evans*, 1 Allen, 443.

It still further appears in the words, "hereby also granting unto said Binney all my right, title and interest in and to a small strip of land adjoining the north end of the land above described, taken by the town to widen Elm Street." This clearly indicates that it was understood that " the land above described " was limited by the description to the side lines ; and to grant the fee of a small strip within and on the edge of the highway " adjoining." It was necessary to particularly include it by the additional words.

It further appears in the words, " the well and pump standing at the northwesterly corner of the above described land." These words indicate the limit or northwesterly corner of the land described in the conveyance to be on the east of the passage way.

*C. A. Welch & F. Woodside*, for the defendant.

DEVENS, J. The only question necessary here to be determined is, what was the legal effect of the deed of Clapp to Amos Binney in 1812, so far as it concerns the conveyance of the easterly half of the passage way. If it failed to convey this, the plaintiff has shown title to it, and may maintain this action, the defendant having done acts therein not authorized by a mere right of passage, which it is conceded he has. If, on the other hand, the easterly half of the passage way was thus conveyed, it is unimportant whether it has been since conveyed by the heirs of Amos Binney, to whom the estate descended, and under whom the defendant claims, as the plaintiff claims no rights under them.

The estate conveyed to Binney was bounded "westerly on a passage way " for the distance of thirty-four feet and ten inches and it is a general rule of construction that where there is a

boundary upon a fixed monument which has width, as a way, stream or wall, even if the measurements run only to the side of it, the title to the land conveyed passes to the line which would be indicated by the middle of the monument. *Newhall* v. *Ireson,* 8 Cush. 595. *Boston* v. *Richardson,* 13 Allen, 146, and authorities cited. This rule of construction is adopted, however, only because it is deemed that the true intent and meaning of the parties is thus carried out; and the deed is always to be construed by this intent as indicated by its various parts, or by the character of the locality to which its description is to be applied. Each case must therefore depend, to a greater or less extent, upon its own peculiar circumstances, and by these it must be decided whether the general rule is to be controlled. *Codman* v. *Evans,* 1 Allen, 443. *Boston* v. *Richardson, ubi supra.*

The plaintiff contends that the intent of the parties that the lot granted to Binney should extend only to the side and not to the centre of the passage way, fully appears; that the careful and minute description in feet and inches of a line so short as that upon Elm Street, which was the front line, precludes the idea that there could have been any mistake, or that it could have been intended to convey to the centre of the way. It is true that the general rule, that monuments govern rather than courses and distances, must yield, when an adherence would lead to a result plainly absurd, or when the intent to exclude them appears. *Davis* v. *Rainsford,* 17 Mass. 207. *Brainard* v. *Boston & New York Central Railroad,* 12 Gray, 407. *Wilson* v. *Hildreth,* 118 Mass. 578. But no such case is here presented. Even this front line, exclusive of the passage way, when a plan (the accuracy of which has not been questioned) is afterwards prepared, is shown to vary in length from that called for by the deed, while, if the length called for is given to the rear line, the description would at the rear include the half of the passage way which is claimed by the defendants to have been conveyed to Binney; the deed giving seventeen feet five inches as the length of that line, while the rear line of the lot as surveyed has only a length of fifteen feet three inches, if the passage way be excluded.

Nor can the monument be disregarded on account of the grant of " the free use and privilege of said passage way in common

with myself, my heirs and assigns." Such a grant was necessary to enable him to use the whole way as a passage. There has been occasion to construe similar words, and it has been held that a similar grant would not show that the grantor had not already granted the fee in half the passage way if, by the usual construction of the deed, it was to be deemed to have been included. *Stark* v. *Coffin*, 105 Mass. 328, 330.

The reservation of a right to use the well and pump on the granted land was of course necessary, if the grantor desired to retain that privilege ; but it cannot be deemed, as the plaintiff argues, that because he grants a fee in the land conveyed, retaining an easement therein, he therefore retains the fee in the passage, granting there only an easement. The well and pump are indeed spoken of as " standing at the northwesterly corner of the above described land ; " but this would be a sufficiently accurate description of the locality of two such objects, if they stood within two feet of the corner, as they would do if the description included the half of the passage. From the nature of the objects, they could not be exactly at the angle which made the northwesterly corner.

Nor is it to be inferred, from the grant of all the right, title and interest which the grantor had in the small strip " taken by the town to widen Elm Street " from the north end of the " land above described," that therefore his grant was to be limited by the side lines as they would be measured. This strip was not in his possession except subject to the purpose for which it had been taken by the town, and he sees fit therefore to describe it separately. But such a description would not be inconsistent with his having conveyed, on the side of the lot described, to the centre of the passage way.

The plaintiff has sought to invoke the principle that where lines are laid down on a plan or map and referred to in a deed, the courses, distances and other particulars appearing on such plan are to be as much regarded as if they were expressly recited in the deed. *Codman* v. *Evans*, 1 Allen, 443. This has, however, no application. No such plan or map existed or was referred to, when the deed to Binney was made. Such a plan was indeed used and referred to when the Binney heirs, many years after conveyed to the defendant's grantor ; but, as before suggested, it

is immaterial here whether they have conveyed the half of the passage or not, if their ancestor received a conveyance of it.

Much reliance has been placed upon the case of *Codman* v. *Evans, ubi supra.* Without discussing that case in detail, it may properly be said that there is here no such exclusion of the passage way as there appeared, nor a description of any of the lines such as was found of the southerly line of the lot there described, which necessarily must have been rejected if the grant of the lot there had been held to extend to the centre of the passage way.

Upon the whole case, the plaintiff has failed to show any intent, as expressed by the deed to Binney, or indicated by the localities, such as should take the construction of it out of the general rule, that the middle of the monument must be the boundary line.

*Exceptions overruled.*