CAROLINE E. GOULD *vs.* SAMUEL W. WAGNER & others.

Middlesex.    January 10, 1907. — October 14, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Deed. Boundary. Way,* Private. *Easement. Evidence. Practice, Civil,* Exceptions.

The owner of a lot of land ninety feet wide, after having built a passageway five feet wide running down a steep hill along the entire easterly side of the lot so as to connect two streets bounding it on the north and south, conveyed the lot by

a deed which described it as eighty-five feet wide and stated the easterly bound-
ary as "on a passageway five feet wide running through the grantor's land."
The grantor owned no land east of the passageway. *Held*, that the deed con-
veyed to the grantee the westerly half of the passageway together with an ease-
ment of way over the easterly half, and that the grantor retained the title to
the easterly half of the passageway, together with an easement of way over the
westerly half. LORING & SHELDON, JJ., dissenting, and being of the opinion
that the entire passageway was conveyed by the deed.

At the trial of a petition for the registration of the title to land which comprised a
passageway, or, in the alternative, to an easement of way to pass to and fro
thereon, where the question at issue was whether one, who was a former owner
of the lot of land which included the passageway and who had built the pas-
sageway, conveyed it or any rights therein by a deed in which the lot was
described as "bounded on" the passageway, evidence in regard to the laying
out and construction of the way and the condition of the locality was *held* to be
admissible.

It is doubtful whether, at the trial of a petition for the registration of the title
to land which comprised a passageway connecting upper and lower streets
on a steep hill, or, in the alternative, to an easement of way to pass to and fro
thereon, where the question at issue was whether the petitioner's predecessor in
title, who was a former owner of the lot of land which included the passageway
and who had built the passageway, conveyed it or any rights therein by a deed
of the lot described as "bounded on" the passageway, evidence should have
been admitted to show that such predecessor in title, at the time when he built
the passageway, owned other lots on the upper street and that the passage-
way then and at the time of the trial was valuable in connection with such lots
and with lots owned by the petitioner, and that other residents on the upper
street used the passageway and paid the petitioner's husband for such use. In
this case the evidence was admitted but did not affect the decision of the Land
Court.

The owner of a lot of land conveyed it by a mortgage to one to whom he afterwards
conveyed his equity of redemption. Later, the grantor conveyed to his wife
through a third person the fee of a passageway along one side of the lot which
he claimed was not conveyed by the former deeds, and, later still, he and
his wife executed and delivered to the grantee named in the first two deeds
a quitclaim deed, in which the boundaries mentioned were the same as the
boundaries in those deeds but the number of the lot was changed, and in which
it was stated that it was to correct errors in those deeds and to confirm the
titles thereby conveyed by the husband. A judge of the Land Court con-
strued the last deed as conveying on the part of the wife any title to the
passageway that had remained in the husband after the first two conveyances
and that had been conveyed to her by him through a third person, and no ex-
ception was taken to his ruling. This court doubted the correctness of the
ruling, but did not decide the matter because no exception was taken.

PETITION, filed in the Land Court December 22, 1905, for
registration of land constituting a passageway five feet wide and
two hundred feet long running between Bennington Street and
Newtonville Avenue in Newton, or, in the alternative, for regis-
tration of an easement of way in the passageway.

The case was tried before *Davis, J.,* who made findings and rulings admitting evidence to which only the respondent Barker excepted.

The evidence referred to in the fifth paragraph of the opinion was as follows : All the property mentioned was situated on the northerly slope of Mt. Ida, a steep hill in Newton, and, owing to the slope of the hill, the streets ran east and west to the main street which led to the railroad station around the easterly slope of the hill.   The passageway in question saved considerable amount of time and distance over the route to the station through the public streets.   Shortly after purchasing the lots now belonging to the respondents, John B. Gould laid out a passageway over the strip now in question, fenced it and erected steps leading down to it from Bennington Street and steps leading down from it at its northerly end to Newtonville Avenue.   This was used by Gould in connection with three lots of his on the southerly side of Bennington Street while he still retained the equity of redemption therein, and also by the petitioner in connection with a lot belonging to her on the southerly side of Bennington Street.   The way also was generally used by residents on Bennington Street, and from some of these John B. Gould received compensation for such use.   The use of the way was of material value to John B. Gould while owner of the lots on the southerly side of Bennington Street, and would still be of material value to the petitioner for use of her lot.

It appears from the bill of exceptions that the source of the titles of the petitioner and of the respondents was one John B. Gould, husband of the petitioner, who obtained title to lot 17 on a plan not material to the case in 1886.   This lot 17 then included the lots of both respondents and the land upon which the passageway, to a fee or to a right of way in which the petitioner claimed title, afterwards was built.   In 1894, after building the passageway, Gould divided lot 17 into northerly and southerly portions, and mortgaged them separately to the Hingham Institution for Savings and in describing the premises used the bounds stated in the second paragraph of the opinion.

In the mortgage of what is now the Wagner lot there was reference to lot 10 by mistake for lot 17.   The further history of the title to the Wagner lot, which, since the respondent Wagner

took no exceptions, is material here only as making clear the facts appertaining to the next to the last paragraph of the opinion, was as follows: In 1894, Gould made the conveyance spoken of at the end of the first paragraph of the opinion, and in 1897 made a quitclaim deed of what is now the Wagner lot to the Hingham Institution for Savings, stipulating that the title should not merge with the mortgage title which the bank already owned. There was the same defect as to number of the lot in this deed of 1897 as there was in the mortgage deed, and so Gould and his wife joined in making the deed dated April 23, 1903, which is mentioned in the next to the last paragraph of the opinion. The description in this deed was identical with that in both of the deeds which it was given to confirm, excepting that it read "lot 17" instead of "lot 10." This deed the judge of the Land Court ruled "was effective to convey the equity of redemption of the petitioner, acquired under her said deed, through a conduit, from her husband in the westerly half of the passageway adjacent to the land now owned by the respondent Wagner."

The history of the title of the Barker lot, after the mortgage to the Hingham Institution for Savings, was as follows: Through mesne conveyances the equity of redemption passed to one who, in 1897, conveyed it to the Hingham Institution for Savings, subject to the mortgage that bank already held and by a deed especially stipulating that the titles should not merge. The bank conveyed the equity in June, 1903, to one from whom by mesne conveyances it came to Barker. In October, 1903, the bank made an entry to foreclose its mortgage and thereafter its mortgage title was deeded to Barker by mesne conveyances. The descriptions in all of the deeds as to the Barker lot were the same as set out in the second paragraph of the opinion.

The judge of the Land Court found "title in the petitioner to the easterly half of the passageway, subject to the right in favor of the respective respondents' estates to use the same as a part of said passageway, and to that portion of the westerly half of the passageway which adjoins the estate of the respondents Barker, subject to the mortgage from John B. Gould to the Hingham Institution for Savings held by said Barker and to the right of the said respondents' estates to use the same as a part

of said passageway "; and, further, that the petitioner had " the right, as appurtenant to the fee in the easterly half of said passageway, to use the whole of said passageway "; and the respondent Barker excepted.

The case was argued at the bar in January, 1907, before *Knowlton,* C. J., *Morton, ˜Loring, Braley,* & *Sheldon,* JJ., and afterwards was submitted on briefs to all the justices.

*R. H. Taylor,* for the respondent Barker.

*S. W. Wagner, pro se,* filed a brief by leave of court.

*T. Weston, Jr.,* for the petitioner.

MORTON, J.   The questions in this case relate to the rights of the parties in a passageway five feet wide, extending from Bennington Street to Newtonville Avenue in Newton, and bounding easterly the lots belonging to the respondents.   The passageway and lots formerly belonged to one John B. Gould, and constituted one lot known as lot 17 on a plan of land belonging to one Granger.   The passageway was laid out by Gould along and next to the easterly line of lot 17.   He did not own then and has not owned since any land easterly of and adjoining lot 17 on that side.   The respondents claim title to the passageway under two mortgages executed by Gould to the Hingham Institution for Savings of the lots belonging to them respectively. The petitioner, who is the wife of said Gould, claims title to the passageway under a conveyance of it to her from her husband through a conduit after the mortgages were given to the Institution for Savings.

The mortgage to the Institution for Savings of the lot belonging to the respondent Barker described it as " Northeasterly on Newtonville Avenue 85 feet; southeasterly on a passageway 5 feet wide running through the grantor's land to Bennington Street 117⅔ feet; southwesterly on other land of the grantor 85 feet, and northwesterly by lot 16 on said plan 117⅔ feet." That of the lot belonging to the respondent Wagner described it as " Southeasterly on a passageway 5 feet wide running through grantor's land to Bennington Street 82⅓ feet; southwesterly on Bennington Street 85 feet; northwesterly on lot 16 on said plan 82⅓ feet, and northeasterly on other land of the grantor 85 feet."   The two lots were each ninety feet on the street.

The principal question is whether the mortgages operated to convey to the westerly line of the passageway, or to the centre of it, or to the easterly line. Upon that question the Land Court found and ruled, in substance, that the petitioner had title to the easterly half of the passageway, with a right of way over the westerly half, and that the respondents had a corresponding right of way over the easterly half. We think that this was correct.

The general rule is that a deed bounding on a way conveys the title to the centre of the way if the grantor owns so far. *Richardson* v. *Boston*, 13 Allen, 146, 152. The reasons for this rule are stronger in the case of a public way than in that of a private way, but the rule applies to both public and private ways. *Motley* v. *Sargent*, 119 Mass. 231. *Fisher* v. *Smith*, 9 Gray, 441. The fact that the distances of the side lines do not extend to the centre of the way is not enough to exclude the operation of the rule. *Clark* v. *Parker*, 106 Mass. 554. *McKenzie* v. *Gleason*, 184 Mass. 452. The question is one of intention. If competent, the evidence which was admitted against the objection of the respondents would tend to show that it would be contrary to the intention of the grantor to construe the mortgage deeds as conveying title to the easterly line of the way. But, independently of that, the question is settled, we think, in this Commonwealth in favor of the ruling of the Land Court, though it has been decided differently in other jurisdictions. See *Haberman* v. *Baker*, 128 N. Y. 253; *Taylor* v. *Armstrong*, 24 Ark. 102; *In the matter of Robbins*, 34 Minn. 99; *Jones* v. *Water Lot Co.* 18 Ga. 539; *Healey* v. *Babbitt*, 14 R. I. 533. In *Lemay* v. *Furtado*, 182 Mass. 280, a case very similar to this, it was held that the grantee took only to the middle of the way. It is true that what the court said on this point was, in a sense, *obiter*. But the point was considered and passed upon at the request of the parties with a view to disposing of the whole controversy, and the opinion is to be regarded, therefore, as deciding the question. The same question was considered in *Gray* v. *Kelley*, 194 Mass. 533, with the same result as in *Lemay* v. *Furtado*, *supra*, and in *Hamlin* v. *Attorney General*, 195 Mass. 309, the question was again presented and a like conclusion arrived at. In *Gray* v. *Kelley*, *supra*, the doctrine laid down in the cases cited above from other States was distinctly repudiated, and this was re-

peated in *Hamlin* v. *Attorney General, supra.* See also *Everett* v. *Fall River,* 189 Mass. 513 ; *McKenzie* v. *Gleason,* 184 Mass. 452 ; *Motley* v. *Sargent,* 119 Mass. 231.

The evidence in regard to the laying out and construction of the way and the condition of the locality was admissible (*Motley* v. *Sargent, supra,* 235 ; *Codman* v. *Evans,* 1 Allen, 443, 446) ; but we doubt whether the evidence in regard to the ownership by the petitioner and her husband of other lots on the other side of Bennington Street, and that the use of the way was of value to their lots, that the way was used by residents on Bennington Street, and that the petitioner's husband was paid for such use by some of the residents, was competent. If admissible, however, it does not affect the construction which, in our opinion, should be given to the mortgage deeds.

We doubt also whether the construction given by the Land Court to the quitclaim deed from the petitioner and her husband to the bank dated April 23, 1903, was correct. The deed was given to correct errors of description in the mortgage of the Wagner lot and in a subsequent quitclaim deed of the equity by said John B. Gould, and " to confirm the title conveyed by said John B. Gould to this grantee by mortgage aforesaid, and by deed of January 22, 1897 " (the quitclaim deed referred to) ; and it may well be doubted whether it operated to convey any title on the part of the petitioner. *Scaplen* v. *Blanchard,* 187 Mass. 73. But no exception was taken to the ruling.

The appeal from the "Supplemental Memorandum and Decision" has been waived. The result is that the exceptions must be overruled.

*So ordered.*

LORING and SHELDON, JJ., are of opinion that the mortgages of the Barker and Wagner lots made by Gould to the Hingham Institution for Savings on August 8, 1894, carried the fee in the whole of the passageway here in question and not in the westerly half only.

This passageway was originally laid out along the easterly boundary line of the grantor's land. and he at no time owned any land beyond it.

It is agreed by all that the mortgages in question, as matter of construction, did not stop at the westerly side line of the

passageway. It is also agreed that there is nothing to indicate an intention that the easterly boundary of the lot, not stopping at the side line of the way, should go to the centre or to the further side of it. The case now before us is confessedly that of a conveyance of premises bounded by a way on the extreme limit of the grantor's land but wholly upon it, where no intention can be gathered as to where the side line is to be beyond the fact that the lot is bounded by the way.

In every case in which this point has been up for decision it has been held that the fee in the whole of the passageway passed to the grantee. It has been so held in well considered cases in New York, Rhode Island, Minnesota, Arkansas and Georgia. *Haberman* v. *Baker*, 128 N. Y. 253. *Healey* v. *Babbitt*, 14 R. I. 533. *In re Robbins*, 34 Minn. 99. *Taylor* v. *Armstrong*, 24 Ark. 102. *Jones* v. *Water Lot Co. of Columbus*, 18 Ga. 539.

The question is an open one in this Commonwealth. There is a dictum to the contrary in *Lemay* v. *Furtado*, 182 Mass. 280. The bill before the court in that case was a bill to restrain the defendant from trespassing on a way twenty feet wide which way was the easterly boundary line of the land conveyed to the defendant. It was held that "the defendant has a right of way over the whole tract." The court then adds: "This conclusion is enough for the decision of the case, but as the parties have requested us to do what we can to dispose of the whole controversy, we may add that we see no reason to doubt that the other part of the general rule of construction applies, and that the defendant owns the fee to the middle line of the tract, subject of course to the plaintiff's easement of way." It appears from an inspection of the briefs in that case that no one of the five cases cited above was brought to the attention of the court and that the principle on which they rest was not argued. It may be doubted whether the point now under consideration was in the mind of any one of the judges. However that may be, the statement was *obiter* and does not conclude us from deciding the point the other way in case we are of opinion that it should be so decided. It was decided in *Gray* v. *Kelley*, 194 Mass. 533, (which was disposed of while the case at bar was under advisement,) that as matter of construction of the deed there in question the boundary of the lot stopped at the side line of the way.

The statement in that case of what would have been the bound-
ary line if it had not stopped at the side line of the way is an
expression of opinion which is even less decisive of the point
now up for decision.  The same is true of the subsequent case
of *Hamlin* v. *Attorney General*, 195 Mass. 309, also decided while
the case now before us was under advisement.  There also it was
decided that the boundary of the lot stopped at the side line, and
the statement of where it would have gone had it not stopped
there is an *obiter dictum* not conclusive of the question which
we are now called upon to decide.

As we have said, the question we have to consider is what the
boundary line is where the lot is bounded on a way wholly on
land of the grantor, when he has no land on the other side of
that way and where there is no evidence of an intention on his
part as to how far that side of the lot shall extend.

Cases where the grantor owns not only the fee in the way but
land on the other side of it belong to another class.  It cannot
be assumed in such a case that the grantor owning the land on
both sides of the way intended that the grantee should fare
better than he was to fare himself after the conveyance, and for
that reason the grantee takes to the centre of the way only.

Excluding these cases, the true rule is that a conveyance of
land bounding on a way where as matter of construction the
granted premises do not stop at the side line goes to the line of
the ownership of the grantor.  There is a presumption that he
owns to the centre.  Consequently on its face a deed bounding
on a way goes to the centre.  But this presumption may be
rebutted.  If it appears to be the fact that the grantor's title
stops at the side line, his grant of land bounded on the way stops
at the side line.  On the other hand, if it appears to be the
fact that the grantor's title extends to the other side of the way
the deed conveys to the grantee the fee in the whole of it.

The reason given in the decided cases for going to the centre
of the way when the grantor owns to the centre is stated in
these words by Gray, J. in *Boston* v. *Richardson*, 13 Allen, 146,
153: " But in the absence of words clearly manifesting an intent
so to do, the law presumes that he did not intend to reserve the
title in a strip of land, not capable of any substantial or bene-
ficial use by him, after having parted with the land by the side

of it, while the highway remains, nor ordinarily of any consider-able value to him if the way should be discontinued, and the ownership of which by him might greatly embarrass the use or disposal, by his grantee, of the lot granted." To the same effect see Shaw, C. J., in *Smith* v. *Slocomb*, 9 Gray, 36, 37 ; C. Allen, J., in *Gould* v. *Eastern Railroad*, 142 Mass. 85, 89.

This reason applies with still greater force to the further half of a way on which the grantor after the deed in question takes effect owns no land, and where for this reason the nearer half passes to the grantee. No reason has been and it is believed no reason can be enunciated for holding that the grantee, who in such a case takes the nearer half of such a way, does not take also the further half.

The conclusion to which the court will be driven in similar cases is worthy of consideration. If the conveyance in the case at bar goes to the centre of the way only, a conveyance by a wall on the extreme edge of the grantor's land but lying wholly on his land must of necessity go to the centre and not include the whole wall. Surely that is a conclusion which should not be reached.

Again, no one has ever contended that a deed of land bounded by the seashore stopped half way down the beach. It is con-ceded there that it is the line of high or low water. See *Doane* v. *Willcutt*, 5 Gray, 328; *Haskell* v. *Friend*, *ante*, 198. There is little, if any, more reason for stopping in the centre of a way when the grantor owns the fee in the whole and the boundary as matter of construction of the deed does not stop at the side line, than there is for stopping half way down the seashore if, as matter of construction, the line of high water mark is not the boundary line.

For these reasons, in the opinion of these judges the excep-tions should be sustained.