# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## CITY OF RICHMOND v. THOMPSON'S HEIRS.

### March 12, 1914.

### Absent, Cardwell, J.

1. EMINENT DOMAIN—*Petition—Departure—Amendment.*—If the petitioner in a condemnation proceeding asks, in its petition, to condemn the fee in lands, it has no right to ask for a different interest or estate to be condemned for its purposes without an amendment of its petition or the consent of the owner of the property.

2. BOUNDARIES—*Highways—Streams—Alleys—Deeds.* — The general rule is that the conveyance of land bounded on a highway or private stream includes the soil to the center of the highway or the center of the stream, provided the grantor at the time owned to the center, and there are no words or specific description to show a contrary intent; and where the land is bounded on a private way the same rule of construction obtains, though perhaps not so universally. The fact that the distance of the side lines does not extend to the center of the way is not enough to exclude the operation of the rule. It is also the prevailing rule that when a call in a deed is for an alley, which alley is owned by the grantor and is the limit of his land at that point, it gives title to the bed of the alley.

3. EMINENT DOMAIN—*Easement—Right of Way—Damages.*—In condemning the fee in land that is subject to a private right of way, the owner is entitled to have allowed to him as damages the fair market value of the land subject to the right of way. In this State, the location of an additional servitude upon a highway cannot be imposed without compensation to the owner where the fee is in him.

Error to a judgment of the Hustings Court of the city of Richmond in a condemnation proceeding. Judgment for the defendants. Petitioner assigns error.

*Affirmed.*

The opinion states the case.

*H. R. Pollard,* for the plaintiff in error.

*Alfred E. Cohen,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

This is a proceeding instituted by the city of Richmond against the heirs of W. M. Thompson, deceased, and others, to condemn for its purposes as a public alley a thirteen foot strip of land, or certain interests therein, used as a private alley, as shown by the plat below:

MARSHALL STREET

The parties defendant to this proceeding, other than the Thompson heirs, entered into an agreement with the city of Richmond, before the hearing of the cause, by which the city acquired their interests in the thirteen foot alley in rear of the lot fronting 100 feet on Marshall street.

When commissioners were appointed to ascertain the compensation for the property sought to be condemned and to assess the damages, if any, to the adjacent property owners, as provided by statute, the city offered an instruction which it asked the court to give the commissioners to guide them in discharging their duties. Upon objection by the Thompson heirs, the court refused to give the instruction and in lieu thereof instructed the jury as follows:

"1.   That if the city of Richmond desires to open the 13 foot alley to the public as a public alley or highway by condemnation of the property, it is required to condemn and take all of the interest and estate of the heirs of W. M. Thompson, deceased, in and to the land embraced in said alley, and to make just compensation therefor.

"2.   That the heirs at law of W. M. Thompson, deceased, have an estate in fee simple in and to the whole of the land embraced in said 13 foot alley, subject however, to the rights of the owners of the adjoining lots of land fronting one hundred feet on the south line of Marshall street which were conveyed by Commissioners Goddin and Sands to Joseph Heppart, and B. Brauer, respectively, to use and enjoy the said alley as an easement to their property; and that the said heirs of W. M. Thompson, deceased, are entitled to the possession and use of the land embraced in the whole of said alley, in any manner not inconsistent with the use of it as an easement by the owners of the said lots of land, adjoining on

the east, which were conveyed to Heppart and Brauer or either of such owners.

"3.   That the commissioners will ascertain what is the fair market value of the land embraced in said alley, together with the uses to which it may be applied, subject, however, to the encumbrance upon said land of the use thereof as an easement by the owners of the lots or land adjoining it on the east, which were conveyed by commissioners Goddin and Sands to Joseph Heppart and B. Brauer, respectively, or either of such owners.

"4.   If the commissioners believe from the evidence that the market value of the lot of land and the property of the heirs of W. M. Thompson, deceased, abutting on the north side of said 13 foot alley will be damaged by converting the said strip of land or alley in common, into a public alley, then, and in that case, they should ascertain to what extent the said heirs at law will sustain injury; and in determining that question, they, the commissioners, should take into consideration all physical injury if any to the said property of the said defendants caused by noise, vibration or otherwise, and assess such damages as they believe from the evidence the said defendants will sustain; the measure of said damages, however, not to be in excess of the difference between the market value of said lot, in its present condition with relation to said alley in common, and what will be the market value thereof after the conversion of said alley into a public alley."

No objection is made by the city to the last of these instructions (No. 4) nor to the damages assessed under it by the commissioners and allowed by the court. The controversy here is over the other three instructions.

The objection made by the city to the first of these is, that the court erred in telling the jury that the city could not condemn for its purposes a less interest in the thir-

teen foot alley than that which was owned by the Thompson heirs. The city claims that under its charter, whatever the general law may be, it has the right to condemn an easement or other less interest or estate in property wanted for street purposes and is not required to condemn the entire interest or estate of the owner.

Whether or not the city has the right claimed it is unnecessary to decide in this case; for it is clear from the petition of the city, which it was required to file and which it did file under clause 25 and clause 4 of section 1105-f of Virginia Code, 1904, that it sought to condemn the entire interest of the Thompson heirs in the thirteen foot alley.

Clause 4 of that section provides, that in such petition "there shall be set forth the interest or estate intended to be taken." Without an amendment of its petition or the consent of the owner or owners of the property, the city clearly had no right to ask for a different interest or estate to be condemned for its purposes than that set forth in its petition.

By instruction No. 2 the commissioners were told that the Thompson heirs owned an estate in fee simple in and to the whole of the land embraced in the thirteen foot alley, subject, however, to the rights of the owners of the adjacent land fronting one hundred feet on Marshall street to use the said thirteen foot alley as an easement to their property. The correctness of this instruction depends upon the question whether in the conveyances under which the Thompson heirs derived title the land embraced in the thirteen foot alley was included or its use as an alley was a mere easement to the land passing by such conveyances. The hustings court found (and its finding is, we think, substantially correct) that, "The evidence shows that about thirty years ago Archibald Thomas owned a lot of land with a dwelling house and

other improvements thereon, in the city of Richmond, beginning at the intersection of the south line of Marshall street with the east line of Second street, running thence eastwardly along the south line of Marshall street and fronting thereon one hundred and ninety-seven feet, and extending back between parallel lines at right angles with Marshall street one hundred and sixty-three feet. It also appears from the evidence that there was once a brick wall, parts of which yet remain, partially enclosing this lot, extending from Second street eastwardly along the southern or rear boundary of this lot, one hundred and ninety-seven feet, and thence at right angles northwardly towards Marshall street. After the death of Mr. Thomas the lot was, with the dwelling house and other improvements, assigned to his widow as her dower.

"In December, 1880, after the death of Mrs. Thomas, the widow of Archibald Thomas, a suit was brought in the Chancery Court of Richmond for the partition of this lot of land among the three heirs at law of Archibald Thomas. In this suit it was ordered and decreed that the Mansion House tract at the southeast corner of Marshall and Second streets, fronting ninety-seven feet on Marshall street, should be assigned to Cally T. Ryland, an infant, and Julia A. Wortham, and that the one hundred feet adjoining on the east should be sold and Wilson C. Thomas, another heir, should receive the proceeds from such sales in payment for his interest.

"A plat of the property was made by direction of the commissioners appointed to make sale of the lands and a copy thereof is filed with these proceedings. From this plat it appears that the Mansion House tract has a front on the south line of Marshall street of ninety-seven feet, and runs back southwardly one hundred and fifty feet to an alley thirteen feet wide. On the plat there are these words: 'The 13 foot alley, not yet opened, but to be

opened when sale of 100 feet. This 13 foot alley for the use in common of the owners of the Mansion House property and of the 100 feet, or any part of either.' The land originally extended back from Marshall street 163 feet, and this 13 foot alley in rear, opening into Second street and extending back 97 feet, was wholly carved out of the Mansion House tract. On said plat there is also set apart an alley 20 feet wide in rear of the remaining 100 feet on the east."

By regular conveyances with substantially the same descriptions, so far as the question under consideration is involved, the lot fronting 97 feet on Marshall street was acquired by Sitterding and Carneal, who sub-divided that lot into seven lots, five of them fronting on Marshall street and two of them, in the rear of those, fronting on Second street. The most southerly of these lots fronting on Second street and abutting on the 13 foot alley was conveyed with the dwelling which had been erected thereon by Sitterding and Carneal to one Roberts, and from him by regular conveyances it passed to W. H. Thompson, the father of the defendants in error. In all these conveyances, as found by the hustings court, the lot "is described as beginning 132 feet south of Marshall street . . . thence running southwardly and fronting on Second street to an alley, or to a twelve foot alley, as some of the deeds described it, and running back eastwardly from Second street ninety-seven feet, and reference is made to the preceding deed." In some of the conveyances the lot is described as "fronting on Second street eighteen (18) feet to an alley and running back from said front within parallel lines ninety-seven (97) feet."

The general rule is that a conveyance of land bounded on a highway or private stream includes the soil to the centre of the highway or the centre of the stream, pro-

vided the grantor at the time owned to the centre, and there are no words or specific description to show a contrary intent. *Durbin* v. *Roanoke Building Co.,* 107 Va. 753, 60 S. E. 86; *Schwalm* v. *Beardsley,* 106 Va. 407, 409, 410, 56 S. E. 135 and authorities cited; *Hodges* v. *S. A. R. R. Co.,* 88 Va. 663, 665-669, 14 S. E. 380. And where the land conveyed is bounded on a private way the same rule of construction obtains, though perhaps not so universally. 2 Devlin on Real Estate, sec. 1225-h.

In *Peck* v. *Deniston,* 121 Mass. 17, 18, it was said by C. J. Gray, that "The general rule is well settled that a boundary on a way, public or private, includes the soil to the centre of the way, if owned by the grantor, and that the way thus referred to and understood is a monument which controls course and distance, unless the deed by explicit statement or necessary implication requires a different construction."

And the fact that the distance of the side lines does not extend to the centre of the way is not enough to exclude the operation of the rule. *Gould* v. *Wagner,* 196 Mass. 270, 275, 82 N. E. 10.

It also seems to be the prevailing rule, and for like reasons, that when the call in a deed is for an alley, which alley is owned by the grantor and is the limit of his land at that point, it gives title to the bed of the alley.

In *Albert* v. *Thomas,* 73 Md. 181, 20 Atl 912 "where the easternmost portion of a lot designated as Lot No. 8 was laid out as an alley for the use of said lot in common with others, a deed purporting in the general description to convey said lot No. 8, but in the particular description making said alley the eastern boundary of the lot described," was held to carry the bed of the alley, notwithstanding such mention of the alley as a boundary.

In *Miller* v. *Robins* 34 Minn. 99, 24 N. W. 356, 57 Am. Rep. 40; it was held that where the original owner of

land platted it into lots and streets, and laid out a street on the margin wholly on his own land and next to im-platted lands belonging to a stranger, his conveyances of lots bounded on such street carried the fee to the whole street. See also *Haberman* v. *Baker*, 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 611; *Healy* v. *Babbitt*, 14 R. I. 538; *Taylor* v. *Armstrong*, 24 Ark. 102.

Tested by these rules of construction, the hustings court properly held that the Thompson heirs were the owners in fee of the bed of the 13 foot alley, subject to the easement of the owners of the other portion of the original lot fronting 100 feet on Marshall street. There was nothing in the conveyances under which the Thompson heirs derived title which by explicit statement or necessary implication showed that the grantors in such deeds intended to reserve title to the soil in the said alley.

The objection to instruction No. 3 is that it told the commissioners that the Thompson heirs were entitled, as compensation for the land embraced in the 13 foot alley, to its fair market value, subject to the said easement upon it, when the commissioners should have been instructed that the Thompson heirs were only entitled to nominal compensation therefor.

Whether or not, if the city had sought to condemn an easement in the 13 foot alley—the right to change the private way over it into a public way—the Thompson heirs would have been entitled to compensation or more than nominal damages, need not be considered as that is not the case. The object of the city being, as we have seen, to condemn the entire interest (the fee simple estate) of the Thompson heirs in the land embraced in that alley, the question we have to decide is the measure of their compensation for the land taken. If there had been no right of way over it, it is clear that they would have

been entitled to the fair market value of the land embraced in the alley. As they owned the land subject to that right of way, it is difficult to see why they are not entitled to its fair market value subject to that easement or incumbrance. With us the location of an additional servitude upon a highway cannot be imposed without compensation to the owner where the fee is in him. *Western Union, &c. Co.* v. *Williams,* 86 Va. 696, 705, 11 S. E. 106, 8 L. R. A. 429, 19 Am. St. Rep. 908; *Hodges* v. *S. A. R. Co.* 88 Va. 653, 14 S. E. 380; *Meyer* v. *City of Richmond,* 172 U. S. 82, 19 Sup. Ct. 106, 43 L. Ed. 374.

Lewis on Eminent Domain (3rd ed.), sec. 743, in discussing this subject says, that "If there is a private way over the property taken, this should be taken into consideration in fixing the damages, and the value, subject to such easement, should be awarded."

If this be so, *a fortiori,* such owner is entitled to compensation when he is deprived of all of his interest in the land.

"It is well settled," it is said in 15 Cyc. 712, "that the owner of land which is subject to easements vested in adjoining owners is entitled to substantial damages, where the fee is sought to be acquired under legislative or municipal authority, for the purpose of a public street." This statement seems to be fully sustained by the great weight of authority. 1 Lewis on Eminent Domain, sec. 743.

The remaining assignments of error are to the action of the court in confirming the commissioners' report as to the compensation allowed the Thompson heirs for the land taken and in directing it to be distributed to them. These objections are based upon the theory that the action of the court in instructing the commissioners was erroneous. As that was not the case, it follows that in neither respect did the court err.

The court is of opinion that there is no error in the judgment complained of to the prejudice of the city of Richmond, and that it must be affirmed.

*Affirmed.*