# 𝔖taunton

EDGAR WILLIAMS v. WILLIAM RAY MILLER AND
IDA LILLIAN MILLER.

September 5, 1945.

Record No. 2944.

Present, All the Justices.

The opinion states the case.

*T. L. Hutton* and *M. E. Burson,* for the plaintiff in error.

*George M. Warren* and *H. E. Widener,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

This is an action brought under Code, section 5490, to establish a boundary line between neighbors. By agreement, without the intervention of a jury, the case was submitted to the court, which found for the plaintiffs. Both litigants claim under Daniel Necessary.

On April 7, 1933, Ida C. Necessary and D. H. Necessary, her husband, executed to E. F. Williams a deed to a small parcel of land in Washington county, bounded as follows: "On the west by the old public road now closed, on the south by the old Kentucky road, on the east by the State highway No. 11."

On July 18, 1940, Daniel Necessary, special commissioner, and the Necessary heirs executed to William Ray Miller and Ida Lillian Miller, his wife, a deed for property thus described:

"Beginning in the Reedy Creek road, a corner to Edgar Williams, near W. R. Miller's residence, and runs as follows: S 64 30. W 230 feet with said road a corner to Mrs. Ida C. Necessary, deceased, thence a new line N 36 W 249 ft. to a planted stone; thence S 64 30 W 350 ft. to a planted stone in F. Luchini's line, thence N 36 W 1111 ft. to Mrs. Vernie Shankel's corner, an oak tree, but now gone, thence with Mrs. Vernie Shankel's line N 69 30 E 250 ft. to a planted stone on the bank of road No. 632, thence with said road S 82 15 E 214 ft. to the State Highway; thence with said Highway S 60 45 E 563 ft. to a planted stone on the east side of the old road now closed, a corner to Edgar Williams; thence with Edgar Williams' line S 39 30 E 185 ft. to a planted stone; thence S 25 E 564 ft. to the beginning,

containing 16 acres, more, or less, as surveyed by N. L. Kaylor, and being a part of the same property inherited by the parties of the first and second parts from their mother, Ida C. Necessary, who died intestate leaving said children, and being a part of the same property conveyed to Ida Necessary by Daniel Necessary by deed which is of record in the Clerk's Office at Abingdon, Va. in D. B. 104, pg. 384."

The plaintiffs' land and the defendant's land have a common boundary line—wherever that is. Plaintiffs claim that their boundary line is on the east and not in the center of the old public road, now closed. The defendant's claim is that his line goes to the center of the old public road.

If plaintiffs' land extends entirely across this old road and to its eastern boundary, there is no interlock; if defendant's land extends to the middle of this old road, there is an interlock. In that event, the older grant prevails. In the road itself is now a shallow pond, put there by the defendant. Through it runs a.wire fence, built by him in 1937. From it both plaintiffs' and defendant's cows drink, when there is water there. The fence itself runs substantially down the center of this road and was located, according to defendant's claim, with the plaintiffs' consent. This plaintiffs deny, and on this conflict of evidence we must hold. with the plaintiffs, as did the lower court. But, as we shall see, it is not on its location that this case turns.

Plaintiffs claim that there is a fence on the east side of this road but not on the west. This is the character of this east side fence when the defendant purchased—the defendant said that he had to build a fence to keep his cattle in—and his evidence is:

"Q. There was a fence there?

"A. Yes, sir.

"Q. And the fence was in existence on the east side, but not on the west, when you bought?

"A. No, but there had been a fence there.

"Q. But was not when you bought?

"A. There was an old fence there. * * * * Wasn't any fence there to turn my cattle when I bought."

Daniel Necessary, a witness for plaintiffs, testified on cross-examination as follows:

"Q. What was the state of that fence on the east bank of the road at the time you sold Necessary and Williams their land? Wasn't it about to fall down?

"A. Wasn't no good fence, an old road fence; it stood along the road.

"Q. Wouldn't turn cattle?

"A. I think it would turn cattle a little. It wasn't no good fence, nothing like that.

"Q. But it was fenced on both sides of the road?

"A. Used to be.

"Q. At the time you first contracted with Williams, there was a fence on both sides?

"A. I don't recollect.

"Q. That was some eighteen years ago?

"A. I don't remember. I don't remember when I tore it out.

"Q. You wouldn't say whether there was or was not a fence on both sides of the road?

"A. Wasn't when I sold the last land.

"Q. The first land?

"A. Might have been at that time."

Mr. Cole, a surveyor, was asked: "You could see where there was an old fence, and that is all you did?" He answered: "Yes, sir."

When Williams bought, it was but a skeleton fence. There appears to have been some uncertainty in Necessary's mind when Williams bought as to whether the purchase went to the fence or the edge of the road. He tells us:

"Q. You called for the east bank of the road in Williams' deed?

"A. Yes, sir.

"Q. If Williams was to take to the fence, why didn't you call for the fence along the old road?

"A. I didn't understand.

"Q. If the line runs with the fence, why did you not call for the fence on the east bank, in the deed to Williams?

"A. I sold him—it was under a kind of a fence, he could pasture in there. I sold to that—made that old road the line.

"Q. You made the old road the line?

"A. The west side, with the State Highway.

"Q. You didn't make the fence the line, made the old road the line?

"A. The fence, I thought, was the line."

Sometimes it would appear that Necessary thought he was selling to Williams pasture land to the fence and other times land to the edge of the old road, but what Necessary thought or intended is unimportant. The Williams deed speaks for itself. His purchase is bounded "On the west by the old public road now closed."

The general rule applicable to conditions prevailing here is well established and is thus stated in 11 C. J. S. 580:

"It is the established rule that a conveyance of land bounded on a street or highway carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time owned to the center and the language used in the conveyance, and the surrounding circumstances, do not indicate a contrary intent."

To the same effect is section 37, 8 Am. Jur. 774, and note in 18 Annotated Cases 74.

This subject is elaborately discussed by these authorities which cite unnumbered cases. This rule has been followed in Virginia. *Talbot* v. *Massachusetts Mut. Life Ins. Co.,* 177 Va. 443, 450, 14 S. E. (2d) 335; *Richmond* v. *Thompson,* 116 Va. 178, 81 S. E. 105; *Durbin* v. *Roanoke Bldg. Co.,* 107 Va. 753, 60 S. E. 86; *Schwalm* v. *Beardsley,* 106 Va. 407, 56 S. E. 135, and *Hodges* v. *Seaboard, etc., R. Co.,* 88 Va. 653, 14 S. E. 380; 2 Devlin on Real Estate, section 1225-h.

In *Talbot* v. *Massachusetts Mut. Life Ins. Co., supra,* Chief Justice Campbell reaffirms this statement by Judge Buchanan in *Richmond* v. *Thompson, supra,* where it is said:

"The general rule is that a conveyance of land bounded on a highway or private stream includes the soil to the center of the highway or the center of the stream, provided the

grantor at the time owned to the center, and there are no words or specific description to show a contrary intent."

The deed of 1933, as we have seen, contains no limitation when it says that the land conveyed is "bounded as follows: On the west by the old public road now closed."

In *Richmond* v. *Thompson, supra*, it is said that this general rule must be applied where "there are no words or specific description to show a contrary intent."

The principle here applied was reaffirmed by Mr. Justice Hudgins in the late case of *Cogito* v. *Dart*, 183 Va. 882, 33 S. E. (2d) 759.

In 8 Am. Jur. 775, is this:

"* * * in the absence of fraud or ambiguity in the language of the conveyance, the means of rebuttal must lie within the conveyance itself, as the admission of parol evidence as to other facts would violate one of the canons of the law of evidence. The general rule would seem to be that a reservation by the grantor will not be adjudged, except when it clearly appears from the language of the conveyance that such reservation was actually intended. The intent must be clearly expressed; and it has been held that where the owner of land through which a street is being opened grants land on one side of the street to a railroad company and on the other to a private citizen, the one deed running to the new street thence along its side, and the other to the margin of the new street thence to the point of beginning, the intention to reserve the fee of the street does not appear with sufficient clearness to overcome the legal presumption that the grantee take to the middle of the street. The use or omission of the term 'appurtenances' has no effect upon the application or denial of the presumption."

In *Jacob* v. *Woolfolk*, 90 Ky. 426, 14 S. W. 415, 9 L. R. A. 551, the court said:

"To allow the verbal intention of the parties to prevail against this written evidence would be to violate one of the most thoroughly settled rules of evidence."

Whenever there is any room for construction, we follow that which favors the grantee. 11 C. J. S. 581.

If Necessary intended to sell to Williams the land "to the fence" then he never sold the land "to the road" at all though he does elsewhere say that he intended to sell to the road. But this is unimportant, for plainly unambiguous language, written into the deed, must prevail. No reservations are even suggested.

We reach the conclusion that evidence to contradict unambiguous language in a deed is inadmissible and that Williams, under his deed, took to the center of this road. Without further elaboration it suffices to say that the general rule prevails.

This case is reversed and remanded to the end that the line along the center of the road may be established as the true boundary between the land of the plaintiffs and the defendant, and it is so ordered.

*Reversed and remanded.*