JOHN McKENZIE *vs.* CHARLES S. GLEASON.

Plymouth.    June 17, 1903. — January 4, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Deed.  Boundary.  Way.  Practice, Civil,* Exceptions.

A boundary in a deed running from "a stake and stones near an old road leading to the shore; thence by said road . . . to a stake by a pair of bars ", where the road was over land of the grantor and the use of such a way was required for the reasonable enjoyment of the land conveyed, was held to include the fee to the centre of the road, and also a right of way to the grantee in common with others over the whole road.

A boundary in a deed by the nearer side line of a road over land of the grantor excludes the road, and the grantor is not estopped to deny its existence.

By a deed of land bounding on a private road over land of the grantor, the grantor *is estopped to deny the existence of the road, and* the grantee acquires a right of way through the entire length and width of the road as it existed upon the land of the grantor when the deed was given.

No exception lies to an erroneous instruction which could not have harmed the excepting party.

In an action of tort for the obstruction by a fence of a road over which the plaintiff claims a right of way, where by the bill of exceptions it is agreed, that if the plaintiff had a right of way over the road, the fence constituted such an obstruction of it as to support the declaration, it is not open to the defendant to contend that the plaintiff's evidence showed the building of a fence across the road at a point not included in the description of the road in the declaration.

TORT, with four counts, the first two for malicious prosecution, the third for the obstruction of a way, and the fourth for trespass upon the plaintiff's close at Wareham. Writ dated July 24, 1901.

At the trial in the Superior Court before *Bell*, J., the plaintiff elected to proceed to trial upon the first, third and fourth counts.

The following is taken from a plan used at the trial and at the argument, the land of the plaintiff and the defendant being marked " J. McKenzie " and " C. S. Gleason " respectively:

The premises of the plaintiff and the defendant were owned by one Francis Dana at the time of his death on July 5, 1876. By his will, proved on August 28, 1876, the real estate of Francis Dana was conveyed to his wife, Eliza J. Dana.  On May 20, 1885, Eliza J. Dana conveyed to the plaintiff certain premises conveyed to her by the will of her husband, described as follows: " A certain piece or parcel of land situated in that part of Wareham called Long Neck and adjoining a houselot of Thaddeus C. Baker, and bounded as follows: Beginning at the easterly corner of said Baker's lot, and running South 40° West, fourteen rods to a cedar post; thence North 35 1-4° West sixteen rods to a stake and stones near an old road leading to the shore; thence by said road North 88 3-4° East thirteen rods to a stake by a pair of bars; thence South 60 1-2° East seven rods to bound first mentioned: containing one hundred and fifty rods more or less."   This was the plaintiff's south lot.

Eliza J. Dana died on January 15, 1889, still retaining the

premises to the north and northeast of the premises conveyed to the plaintiff.

Under her will, and by virtue of releases from the other heirs, the premises adjoining the last described premises of the plaintiff on the north and northeast became the property of one Israel Wixon. On March 17, 1900, Israel Wixon executed to the plaintiff a deed of the triangular piece of land north of the premises conveyed by the deed of May 20, 1885. The description contained in the deed of March 17, 1900, was as follows: "A certain lot of land situated in that part of said Wareham called Long Neck and on the southerly side of the state highway, and is bounded as follows: Beginning at a stake at the northeast corner of said lot and the northwest corner of a private road used by Thaddeus C. Baker and on the southerly side line of the state highway: thence running south 69° West by the southerly side line of the state highway two hundred and twenty feet to a stake at the easterly side of a private road; thence South 11° 45' East by said private road six feet; thence South 81° 30' East by the northerly side of said private road forty-six feet; thence due east also by the northerly side of said private road one hundred and seventy-three and 5-10 feet to the westerly side of the private road first mentioned used by Thaddeus C. Baker aforesaid; thence North 9° West by the westerly side of said private road ninety-two and 5-10 feet to the first mentioned bound. Containing forty-one square rods more or less." This is called in the opinion the plaintiff's second lot.

On April 30, 1900, the premises marked on the plan "C. S. Gleason," which, after the death of Francis Dana, had been owned and occupied by Eliza J. Dana or her assigns, were conveyed by Israel Wixon to the defendant.

The plaintiff contended and asked the judge to rule that the plaintiff, under his deed of May 20, 1885, became entitled to the southerly half of the old road to the shore adjoining his premises; and that the language of the deed carried the northerly line of the premises conveyed by that deed to the central line of the road. The judge ruled as requested, and the defendant excepted.

There was evidence, which was not contradicted, tending to show that the road in question on May 20, 1885, existed in sub-

stantially the same form as shown on the plan. The obstruction of the way, relied upon to support the third count, consisted in the defendant's putting a wire fence, as indicated on the plan, across the road at a point near the southwesterly corner of the triangular piece conveyed to the plaintiff by Israel Wixon on March 17, 1900, and also along the south side of the alleged way, against what the defendant contended was the north line of the plaintiff's south lot, entirely cutting off the plaintiff from the road.

The plaintiff testified that he had used the road over its entire length as shown on the plan for carting fish and oysters, constantly since the date of his deed of May 20, 1885, until the defendant closed the way, and that he had seen others do so.

At the close of the defendant's case the judge expressed some uncertainty as to the extent of the plaintiff's claim to the use of the road and his contention as to what obstruction had been caused by the defendant. The plaintiff's counsel contended that the evidence showed that the road had existed substantially as shown on the plan before and since May 20, 1885, that the plaintiff had used the entire length of the road as shown on the plan since that time, and that such use was beneficial to his business of an oysterman and keeper of a boarding house for summer boarders. The judge permitted the plaintiff to show on rebuttal that the acts of the defendant in interrupting the plaintiff's use of the road included placing a fence across the road at two points, (1) near the junction of the road with the State road, (2) at a point near the southeasterly corner of the land conveyed to the plaintiff by the deed of March 17, 1900, and that the second fence was still standing as an obstruction of the way at the date of the trial.

The judge refused to make certain rulings requested by the defendant, and the jury returned a verdict for the plaintiff on each of the three counts relied upon by him. The defendant alleged exceptions, raising the questions stated in the opinion.

The case was submitted on briefs at the sitting of the court in June, 1903, and afterwards was submitted on briefs to all the justices.

*G. W. Stetson & H. LeB. Sampson*, for the defendant.
*H. H. Baker & C. F. Chamberlayne*, for the plaintiff.

BRALEY, J. The question presented for decision is, whether the plaintiff under the boundaries in his first deed acquired title to the southerly half of the way, and unless some imperative principle of law requires that the plaintiff cannot have any relief, a construction ought to be given to the deed which will not compel him to use his farm in parts, or exclude him from access to the county road.

The way is either included or excluded by the description in the deed. It cannot reasonably be held, under the language used, to be in part a monument, and in part merely descriptive for the purpose of identifying the line that runs "by the road" from stake to stake. If we exclude the road, the language used runs the line from stake to stake, following the general course of the road as shown on the plan, but in no instance extending beyond the original line so drawn, or in other words, the land of the plaintiff does not reach to or abut on the road. *Motley* v. *Sargent*, 119 Mass. 231, 235. The word "abuttal" means the same as boundary unless there are words that limit its meaning, and if the plaintiff abuts on the road, then he is bounded by the road, which is included. "The road is an abuttal, not a monument; and if the deed does not say on what side, it shall be taken to mean the centre." Shaw, C. J., in *Smith* v. *Slocomb*, 9 Gray, 36, 37. And the words "on the county road" and "by said road" have so been construed by this court. *O'Connell* v. *Bryant*, 121 Mass. 557. *Dean* v. *Lowell*, 135 Mass. 55, 60.

A grantee whose land is bounded by a way owned at the time by his grantor may acquire the right to use that way, not only because he gains a fee in half of it, but also, being so bounded his grantor would be estopped to deny the existence of the way. *Stark* v. *Coffin*, 105 Mass. 328, 330. In the description in the deed, if it were not for the use of the terms "stake and stones near an old road," and "stake by a pair of bars," no question could arise but that the way was included; and the true test is, what was the intention of the grantor under all the circumstances.

It was said in *Clark* v. *Parker*, 106 Mass. 554, 556, "In the construction of deeds, where lands are bounded on or by a way, either public or private, the law presumes it to be the intention of the grantor to convey the fee of the land to the centre of the way, if his title extends so far. This presumption is of course

controlled, whenever there are words used in the description showing a different intention.  But it has been held that giving measurement, in the deed, of side lines, which reach only to the outer line of the way, are not alone sufficient to overcome it."

The earlier cases were apparently in conflict with this rule of construction.  "In some opinions of this court it has indeed been implied or asserted that a boundary upon a road or street passed no title in the land under it.  But in the more recent decisions the general rule has been repeatedly declared, and must now be regarded as the settled law of the Commonwealth, overruling whatever is irreconcilable in the earlier cases, that a deed bounding land generally by a highway, with no restrictive or controlling words, conveys the grantor's title in the land to the middle of the highway."  Gray, J., in *Boston* v. *Richardson*, 13 Allen, 146, 152; *Phillips* v. *Bowers*, 7 Gray, 21, 24.  Compare *Crocker* v. *Cotting*, 166 Mass. 183, 187.

It is now too late to doubt the general rule as to boundaries by, or on, a street or way either public or private, which may be stated in the language used in *Peck* v. *Denniston*, 121 Mass. 17, 18, as follows : " The general rule is well settled that a boundary on a way, public or private, includes the soil to the centre of the way, if owned by the grantor, and that the way, thus referred to and understood, is a monument which controls courses and distances, unless the deed by explicit statement or necessary implication requires a different construction."  Any argument that may be advanced by the defendant founded upon the fact that the side lines run in the first instance to a stake and stones near the way, and in the second from a stake near a pair of bars, and therefore the intention of the grantor was to exclude the way, must be considered with the further facts that after leaving the bars the boundary as shown on the plan still continues for an appreciable distance by the road to the starting point, which was a corner of land that bounded on the road.  And if it was not the intention of Eliza J. Dana to grant to the plaintiff the use of the way, then she had sold a tract of land to the plaintiff to which he could not obtain access without becoming a trespasser, or else be forced to rely on a way by necessity over her remaining land. " The law presumes that one will not sell land to another without an understanding that the grantee shall have a legal right of

access to it, if it is in the power of the grantor to give it, and it equally presumes an understanding of the parties that one selling a portion of his land shall have a legal right of access to the remainder over the part sold if he can reach it in no other way." *New York & New England Railroad* v. *Railroad Commissioners,* 162 Mass. 81, 83.

It is true that this language was used in considering a right of way arising from necessity, but it is equally applicable to the facts disclosed by this case.   In the light of these circumstances the presumption is strong that the grantor did not intend such a result, and the operation of the rule is not to be controlled by a possible, but not reasonable construction, that the length of the side lines of the lot might exclude any part of the road. Under somewhat similar conditions a like conclusion was reached in principle, in the following cases: *White* v. *Godfrey,* 97 Mass. 472, 474, *Motley* v. *Sargent, O'Connell* v. *Bryant, Dean* v. *Lowell, ubi supra, Dodd* v. *Witt,* 139 Mass. 63, 65, and cases cited, *Gould* v. *Eastern Railroad,* 142 Mass. 85, 89, *Chadwick* v. *Davis,* 143 Mass. 7, 9, *Kelley* v. *Saltmarsh,* 146 Mass. 585, *Lemay* v. *Furtado,* 182 Mass. 280.

A majority of the court is of opinion that by his deed the plaintiff took in fee to the centre of the road, with a right of way over the north half; while the half belonging to him was subject to a like easement on the part of others having a right to enter upon and use the way.   *Boland* v. *St. John's Schools,* 163 Mass. 229, 236, and cases cited.

For reasons already stated, the description in the deed of the second lot, which is bounded in part by the county road and on its southerly side by the northerly line of the private road, gives the plaintiff no title to any part of the way, as the boundary is expressly limited to its side line.   The road evidently was referred to for the purpose of description only, and the deed cannot fairly be held to import a grant of anything beyond the boundary named.   It was clearly the intention of the grantor that the way was to be excluded.   The plaintiff, however, does not rest his case solely upon the ground discussed; but also claims that by the description in each deed, whether bounded by the side of the road or by the way itself, he gained an easement in the road as it then was for the purpose of travel,

either on foot or by carriage throughout its entire length and width as it existed at the date of his deeds. The instructions of the presiding judge at the trial adopted this view. By the description of the second lot the road was excluded, and the defendant was not estopped to deny its existence.

But as to the first lot this position is well taken on the evidence and is amply supported by our decisions. There was an implied covenant that the road was in existence, and it must be held to have passed as appurtenant to the plaintiff's estate. *Parker* v. *Smith*, 17 Mass. 413. *Stark* v. *Coffin, ubi supra. Tobey* v. *Taunton*, 119 Mass. 404, 410. *Lemay* v. *Furtado, ubi supra*, and cases cited.* If the plaintiff had a right to use the way in connection with this lot, any obstruction of it by the defendant which prevented or obstructed such use was a trespass, and he is not harmed by the error in the instructions.

There remains to be considered the question of pleading. The third and fourth counts described the plaintiff's close as an entire estate without reference to the way, and the alleged acts of trespass by the defendant are its obstruction by the fence, the cutting down of a shade tree, and disturbance of the soil by digging post holes for the setting of the fence, which was all within the south half of the way that passed to the plaintiff under his deed. The third count describes the way as leading from the county road to the plaintiff's land, and it is now contended by the defendant that under this allegation the plaintiff is limited in his proof of the alleged tortious acts to this description, and that the building of the fence across the way at the point where it first enters upon the defendant's homestead is not within the allegation. But the allegation is to be treated as a description of the way for the purpose of identification and must have been so understood, as it is immediately followed by the words " and the defendant erected a fence at two places on the same, so that the plaintiff could not use the same."

The answer to this contention, however, is that it appears from the bill of exceptions that " it is agreed that if the plaintiff does own the south half of the way, the tree was on his land, and the removal of it constituted a trespass, and that if the

---

* See also *Driscoll* v. *Smith, ante*, 221.

plaintiff has a right of way over said road, the fence constituted such an obstruction of it as to support the third count."

The instructions of the presiding judge were undoubtedly predicated upon this agreement, which was broad enough to cover any obstruction of the way caused by the erection of the fence in any part of it; and they are not open to this criticism or exception of the defendant.

*Exceptions overruled.*