LILIAN M. HOBART *vs.* MARGARET F. TOWLE.

Suffolk.　January 12, 1915. — February 26, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Deed,* Reference to plan. *Easement.*

Where on a large plan, upon which streets are designated and blocks of building lots are marked out, there is left in one corner of the plan a blank space more than one hundred feet wide adjoining a railroad location and beyond the end of a certain street that is marked as fifty feet wide, so that, if the designated street were extended, as it afterwards was, at the width of fifty feet, there would be a remaining space more than fifty feet wide available for house lots, the mere fact that the space is left blank on the plan without any marks dividing it into house lots does not show necessarily an intention, in a deed conveying the house lots on the line of the extension of the street opposite the open space, which was made by a grantor who also owned the open space and referred to the plan, that this land should be left open or should be added to the width of the street,

and it properly can be found that the strip of land thus left blank on the plan simply was regarded as undeveloped land and that by the reference to the plan in the deed no easement in the strip was created by grant or implication for the benefit of the lots of land on the opposite side of the extension of the street fifty feet wide.

PETITION, filed in the Land Court on October 14, 1913, for the registration of the title to a parcel of land with the buildings thereon at Nantasket Beach in the town of Hull.

The case was heard by *Davis*, J., who made a decision in substance as follows:

The land in question in this case consists of a strip about four hundred and twenty feet long by fifty feet wide, and lying between A and Lewis Streets adjoining the Waveland railroad station in the town of Hull. In 1885 the Nantasket Company, which at that time owned all the land in the vicinity, recorded in the registry of deeds a plan of its land at Nantasket Beach. The following is a reduced copy of the northeasterly corner of the plan. On

the plan there is shown a way running from far to the south of the property in dispute and labelled "Manomet Avenue 50 feet wide." This way apparently stops at the southerly line of Lewis Street. Between the northerly line of Lewis Street and the southerly line of A Street there is a prolongation of the easterly line of the avenue with a block of lots to the east thereof. Westerly of this block of lots, and between it and the land of the railroad

taken for station purposes, is a blank space. Between the south-westerly corner of this block and the southeasterly corner of the railroad land, on a line with the northerly line of Lewis Street, are the figures "103.5."

In 1886 the trustees of the Nantasket Company conveyed to one Norwell, the predecessor in title to the respondent, the block of lots, describing them as being lots numbered 1238 and 1249 inclusive on the plan, and bounded "westerly by the easterly line of Manomet Avenue extended 409.90 feet." In 1887 the trustees conveyed to one Jordan a number of lots on the plan, and also all and singular any and every other parcel or parcels of land situated at Nantasket Beach. In 1913 the trustees under the will of Jordan conveyed to the petitioner a parcel of land as shown on the plan, between A Street and Lewis Street, bounded "easterly by the extended westerly line of Manomet Avenue shown on said plan extended northerly from Lewis Street to A Street about 410 feet." By deed, dated and recorded since this petition was filed and the examiner's report was made, the Jordan trustees conveyed to the town of Hull all right, title and interest in "the parcel of land being the continuation of Manomet Avenue shown on said plan running northerly from Lewis Street to A Street."

The respondent contends that under the deed to her predecessor Norwell there passed as appurtenant to her land the right to have the entire space of 103.5 feet wide between her land and the station property of the railroad kept open as a part of Manomet Avenue extended from Lewis Street to A Street. "I am unable to agree with this contention. If the plan had shown Manomet Avenue as running from the south fifty feet wide as far as Lewis Street and from that point extending with a width of 103.5 feet to A Street, the contention would be sound; but it did not. It seems to me that it most distinctly showed Manomet Avenue to be a fifty foot street stopping at the southerly line of Lewis Street, and then a vacant space 103.5 feet wide lying between Lewis and A streets. If this were all, however, it could perhaps still be fairly contended on behalf of the respondent that such vacant space was represented to be an open space, and that she is entitled to have it maintained as such. But the Norwell deed expressly provided for the extension of Manomet Avenue through this open space 103.5 feet wide, and this has been done. There remained

an unoccupied strip of land between Manomet Avenue extended and the railroad land suitable for development into house lots.

"It seems to me that the plan showed a certain scheme of streets and avenues, with some blocks divided into lots and others not; and that the vacant space in question indicates rather a space as to which the plan was not yet developed, than a space dedicated as an open space for the benefit of the respondent's lots. The provision in the sale to the respondent for the extension of Manomet Avenue, the sale of Jordan, the extension by his estate of Manomet Avenue as provided for in the Norwell deed, and the subsequent sale of the remaining row of lots to the petitioner, is all consistent with the plan. The space is not needed for the purpose of access to the Waveland station, because ample access is had from A Street, from Lewis Street and from the broad strip of land running between A and Lewis Streets on which the railroad station is built. The case does not seem to me to be at all like *Farnsworth* v. *Taylor,* 9 Gray, 162, and other cases cited by the respondent, but more like the situation in *Attorney General* v. *Vineyard Grove Co.* 211 Mass. 596, and the Copley Square cases cited by the examiner.

"On the agreed facts submitted in this case I rule that the respondent has no easement by grant, express or implied, in the land claimed by the petitioner."

By order of the judge a decree was entered for the petitioner; and the respondent appealed.

The case was submitted on briefs.

*J. Cavanagh,* for the respondent.

*G. E. Curry & C. L. Newton,* for the petitioner.

BRALEY, J. The lands owned by the parties are part of a large tract of unimproved sea shore property formerly owned by the Nantasket Company, which laid it out into building lots with streets or ways shown by a plan duly recorded. By the plan Manomet Avenue, fifty feet in width and one of the principal ways, apparently did not extend beyond the southerly line of Lewis Street, which it intersected, leaving between this line and A Street, the boundary on the south, a parcel of undesignated land of approximately three quarters of an acre. The company very shortly after conveyed the property to trustees who deeded by their numbers certain lots, which included the lots now owned

by the respondent, to one Norwell, bounding them westerly by the easterly line of Manomet Avenue extended southerly "409.90" feet; a distance sufficient to carry the avenue to A Street. The deed also contained the further provision that the grantors reserved the right to change, lay out anew or discontinue any street shown on the plan not necessary for convenient ingress and egress from the granted premises. But as the respondent's lots had no other means of access shown by the plan the grantors and their privies in estate by this description were estopped from claiming that for a width of fifty feet and for its entire length the vacant space had not been appropriated as a part of Manomet Avenue as finally completed. *Cole* v. *Hadley,* 162 Mass. 579. The respondent derives title by deed from Norwell. The lots conveyed, as we have said, were only a part of his purchase, and after designating them by the numbers appearing on the plan they are bounded westerly by Manomet Avenue as extended. It thus appears that the fee in the extension of the avenue, which they have since conveyed to the town of Hull, remained in the grantors. *McKenzie* v. *Gleason,* 184 Mass. 452, 458, 459. And it is to be inferred from the agreed facts that, since the parties bought, the avenue for its entire length has become a public way fifty feet wide. The respondent therefore is forced to contend that only the remaining portion, comprising a little more than one half of the area which the trustees afterwards conveyed to the petitioner, who asks to have her title registered free from such incumbrance, must be left open and unimproved for the benefit of her estate. It is manifest from the record that this parcel always has been eligible for building lots, and the circumstance that the plan contains no subdivision is not as matter of law decisive. *Donnelly* v. *Butler,* 216 Mass. 41, 43. The intention of the owner where there is no specific delineation is to be ascertained from all the circumstances. *Attorney General* v. *Vineyard Grove Co.* 211 Mass. 596. *Lipsky* v. *Heller,* 199 Mass. 310. *Wilson* v. *Massachusetts Institute of Technology,* 188 Mass. 565. The tier of lots abutting on the avenue as extended, with the exception of the corner lots, were inaccessible to the public ways before the extension, in so far as the plan itself conferred any right of access to purchasers. It cannot be inferred that after having them plotted the company did not intend to sell, and it like-

wise is improbable that it also purposed to leave the remaining land unsold, which by the extension would be materially increased in value. It also is of much significance, that no other unmarked areas appear upon the plan. If the company intended to provide open squares or spaces for the benefit of the lot owners or the public, and thereby enhance the value of the lots, and induce purchasers to buy, the inference that it would have provided more than one open space located in the extreme northeasterly corner seems unavoidable. The further fact, that it is bounded westerly by land of the railroad company and is unnecessary as a means of access to the station, strengthens the presumption that when the plan was prepared the strip in question was regarded as undeveloped land. *Peck* v. *Conway,* 119 Mass. 546. *Attorney General* v. *Whitney,* 137 Mass. 450, 455, 456. *Donahue* v. *Turner,* 204 Mass. 274. *Riverbank Improvement Co.* v. *Bancroft,* 209 Mass. 217. The judge having been warranted in so finding, his ruling that no easement by grant or by necessary implication attached to the petitioner's land for the benefit of the respondent's lots was right.

*Order for decree affirmed.*