NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

24-P-1317                                    Appeals Court

TOWN OF HULL  vs.  JOHN FERRARA, SECOND, & another.[1]

No. 24-P-1317.

Suffolk.     September 9, 2025. – March 5, 2026.

Present:  Rubin, D'Angelo, & Toone, JJ.

Real Property, Ownership, Boundary, Deed, Conveyance.  Deed, Construction.  Statute, Construction, Retroactive application.  Practice, Civil, Summary judgment.  Way.

Civil action commenced in the Land Court Department on January 25, 2022.

The case was heard by Kevin T. Smith, J., on motions for summary judgment.

Nathaniel Stevens (James B. Lampke also present) for town of Hull.
Adam J. Brodsky for the defendants.

TOONE, J.  This case addresses the ownership of part of a way in the Nantasket Beach area of the town of Hull (the town). In 2017, the defendants, John Ferrara, II, and Kathleen Ferrara

_____

[1] Kathleen Ferrara.

(the Ferraras), acquired title by a deed to property comprised of two parcels. The first parcel is improved with a single-family dwelling (house lot). The second is unimproved beach land abutting the Atlantic Ocean (beach lot). The disputed area is land between the two lots. Approximately sixty-feet long by fifty-feet wide, the disputed area is part of "Beach Avenue," a way designated on a subdivision plan recorded in 1885. Unlike the rest of Beach Avenue, the part that includes the disputed area is not developed.

In 2022, the town commenced this action in the Land Court seeking to establish and quiet title to the disputed area. See G. L. c. 240, §§ 1-5. The Ferraras counterclaimed pursuant to G. L. c. 240, § 6, alleging that they hold superior title. On cross motions for summary judgment,[2] a judge determined and declared that the Ferraras hold the fee title to the disputed area pursuant to the derelict fee statute, G. L. c. 183, § 58, and the town appealed from the final judgment.[3]

---

[2] The parties filed cross motions for summary judgment on the town's complaint and on the Ferraras' counterclaim to quiet title, but not on the Ferraras' counterclaims for adverse possession and prescriptive easement.

[3] It does not appear that the Ferraras' counterclaims of adverse possession and prescriptive easement were addressed in the final judgment due to the judge's resolving of the claim to quiet title. We express no opinion on these counterclaims on remand, and the parties have not addressed them on appeal.

Based on the undisputed facts, and in light of the Supreme Judicial Court's ruling in Hobart v. Towle, 220 Mass. 293, 296-298 (1915), we conclude that the derelict fee statute does not apply in this case because no "fee interest of the grantor," G. L. c. 183, § 58, in the Beach Avenue way was conveyed to the Ferraras. Rather, the fee in the way was conveyed to another party in 1887, then to the town in 1913. See Hobart, supra at 297 (concluding that 1887 deed that conveyed ways in Nantasket previously retained by grantor, including Beach Avenue, was effective). Grantors cannot convey what they do not own. We further conclude that the statute is inapplicable for the additional reason that the town "changed [its] position" in reliance on the court's decision in Hobart. St. 1971, c. 684, § 2. Accordingly, we vacate the judgment and remand for further proceedings.

Discussion. 1. The derelict fee statute. "When interpreting a statute, our primary duty is to 'effectuate the intent of the Legislature in enacting it.'" Concord v. Rasmussen, 496 Mass. 450, 459-460 (2025), quoting Wallace W. v. Commonwealth, 482 Mass. 789, 793 (2019). "'To that end, we begin with the statutory language,' but 'also consider the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished.'" Concord, supra at 460, quoting Wallace W., supra.

The derelict fee statute was enacted in 1971.  See St. 1971, c. 684, § 2.  It provides,

> "Every instrument passing title to real estate abutting a way, whether public or private, . . . shall be construed to include any fee interest of the grantor in such way, . . . unless (a) the grantor retains other real estate abutting such way, . . . in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, . . . as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way . . . between the division lines extended, the title conveyed shall be to the center line of such way . . . as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line."

G. L. c. 183, § 58.

The purpose of the derelict fee statute "was 'to meet a situation where a grantor has conveyed away all of his land abutting a way or stream, but has unknowingly failed to convey any interest he may have in land under the way or stream, thus apparently retaining his ownership of a strip of the way or stream.'"  Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 803 (2003), quoting letter of Governor Francis W. Sargent to the Legislature dated April 9, 1971, 1971 House Doc. No. 5307.  The statute sought to quiet title to these "sundry narrow strips of land that formed the boundaries of other tracts."  Rowley, supra.  Quieting title in this manner has "the salutary effect of promoting repose; by creating a robust presumption that the adjacent land owner acquired title to the way, the statute

serves to discourage others from trying to search ancient deed records for 'lost' fee interests upon which a competing claim to title could be based."  Kubic v. Audette, 98 Mass. App. Ct. 289, 302 (2020), S.C., 102 Mass. App. Ct. 228 (2023).

To that end, the derelict fee statute created a new rule of construction applicable to instruments passing title to real estate abutting a way.  See G. L. c. 183, § 58; Rowley, 438 Mass. at 803-804.  At common law, there was a presumption that "a deed bounding on a way conveys the title to the centre of the way if the grantor owns so far."  Rowley, supra at 803, quoting Gould v. Wagner, 196 Mass. 270, 275 (1907).  The rationale for this presumption was that a grantor would not usually "intend to reserve the title in a strip of land, not capable of any substantial or beneficial use by him, after having parted with the land by the side of it."  Boston v. Richardson, 95 Mass. 146, 153 (1866).  However, the common-law presumption "was rebuttable by evidence, including extrinsic evidence, of the grantor's contrary intent."  Rowley, supra, citing Gould, supra.

As the law evolved, courts developed the construction that deeds to parcels expressly bounded by a way's side line evidenced that the grantor intended to retain the fee in the way.  Thus, in McKenzie v. Gleason, 184 Mass. 452, 458 (1904), the court concluded that a description of a lot in a deed as "bounded in part by the county road and on its southerly side by

the northerly line of the private road" gave the plaintiff "no title to any part of the [county-road] way, as the boundary is expressly limited to its side line."  In Casella v. Sneirson, 325 Mass. 85, 89 (1949), the court summarized the rule as follows:

> "Ordinarily a deed which bounds the premises 'on' or 'by' a way with no restricting or controlling words conveys title to the middle of the way if the way belongs to the grantor. But the rule is otherwise where the deed describes the boundary as being 'on' or 'by' the side line of a way. Such a description ordinarily indicates that the grantor did not intend to part with title to any portion of the way" (citations omitted).

By enacting the derelict fee statute, the Legislature modified this common-law rule of construction in three ways. See Rowley, 438 Mass. at 803-804.  First, the grantor's intent not to convey to the middle of the way must be expressed in the instrument of conveyance itself -- "extrinsic evidence may not be used to prove the grantor's intent to retain the fee to the way" (citation omitted).  Id. at 804.  Second, the instrument must exhibit that contrary intent "by an express exception or reservation."  G. L. c. 183, § 58.  Third, describing the property as "bounding by a side line" does not sufficiently describe this contrary intent.  Id.

The implementing legislation for the derelict fee statute provides that it took effect on January 1, 1972.  St. 1971, c. 684, § 2.  It further provides that the statute

"shall apply to instruments executed on and after said
effective date and to instruments executed prior thereto,
except that as to such prior executed instruments this act
shall not apply to land registered and confirmed under the
provisions of [G. L. c. 185] before said effective date or
to the extent that any person or his predecessor in title
has changed his position as a result of a decision of a
court of competent jurisdiction."

St. 1971, c. 684, § 2.  The statute thus applies "both
retroactively and prospectively -- except that it [does] not
apply retroactively to previously executed instruments
pertaining to registered land," Conway v. Caragliano, 102 Mass.
App. Ct. 773, 780 (2023), or to land with respect to which a
predecessor in title has changed its position as a result of a
decision of a court of competent jurisdiction.[4]  St. 1971,
c. 684, § 2.

---

[4] The two noted exceptions to the statute's retroactivity
align with the Legislature's intent to resolve ownership where a
grantor "has conveyed away all of his land abutting a way or
stream, but has unknowingly failed to convey [an] interest he
may have in land under the way or stream."  1971 House Doc. No.
5307.  That intent is evident from the original bill, which,
explicitly within the proposed statutory language, excluded
instruments where "any person, or his predecessor in title, has
changed his position in reasonable reliance on different rules
of construction determined by the Supreme Judicial Court prior
to such change."  1971 House Doc. No. 1744.  During committee
review, this language was relocated to the uncodified effective
date and applicability language included in the bill.  1971
House Doc. No. 5078.  Once at the Governor's desk, the exception
was amended and broadened from conveyances made where there has
been a change in position in reliance on rules of construction
determined by the Supreme Judicial Court, to a change in
position made "as a result of a decision of a court of competent
jurisdiction," as well as to include registered land.  1971
House Doc. No. 5307.  Although the statute has been amended

2.  The 1886 Norwell deeds.  In determining whether the Ferraras own the disputed area of Beach Avenue at issue, the judge concluded that "the answer lies in the language of the deeds" by which the trustees of the Nantasket Company conveyed the properties to Henry Norwell in 1886 (Norwell deeds). Although we ultimately reach a different conclusion from the judge, we agree that earlier conveyances in the chain of title are relevant to the inquiry.  Cf. Rowley, 438 Mass. at 801 n.7; Conway, 102 Mass. App. Ct. at 779.

The following facts are undisputed.  An 1885 plan of land created for the Nantasket Company depicts a portion of a 500-acre parcel, including the Ferraras' properties -- a "house lot" and a "beach lot," on either side of the disputed section of Beach Avenue.[5]  In 1886, by two separate deeds, the trustees of the Nantasket Company conveyed the house and beach lots, among other adjacent properties, to Norwell.  The house lot was described as bounded "Easterly by the Westerly line of Beach

_____

multiple times since its enactment, these exceptions have consistently been included in the uncodified effective date and applicability language included in the relevant session laws and remain in effect.  St. 1990, c. 378, § 2; St. 1973, c. 185, § 2; St. 1971, c. 684, § 2.

[5] Although most of Beach Avenue as depicted on the 1885 plan is presently a well-traveled road from which the town maintains twenty-two pathways that provide access to the adjacent beach, the disputed section of Beach Avenue was never improved.

Avenue," and the beach lot was described as bounded "Westerly by the Easterly line of Beach Avenue."

In February 1896, Norwell conveyed the beach lot and the house lot together in a single deed to Gustavus Damon, repeating the boundary descriptions as bound by the side lines of Beach Avenue. The lots were thereafter conveyed together with the same language to subsequent purchasers in April 1896, 1902, 1907, 1946, 1948, 1951, and 1973. Eventually, in 2017, the Francine F. Townsend Living Trust conveyed the lots to the Ferraras.[6]

3. The judge's application of the derelict fee statute to the Norwell deeds. In his summary judgment decision, the judge asked whether each of the 1886 Norwell deeds included the fee to the center line of the adjacent portion of Beach Avenue, such that Norwell took title to the disputed property. The answer, the judge reasoned, depends on which rule of construction is applied. Both Norwell deeds described the land conveyed as being "by the . . . line of Beach Avenue." "Under the old

---

[6] The Ferraras' deed describes the beach lot as being bounded "Westerly by the easterly line of said Beach Avenue" (i.e., consistently with the Norwell beach lot deed), but describes the house lot only by reference to lot 1243 on the 1885 plan. Because we conclude that no "fee interest of the grantor" in the Beach Avenue way was conveyed to the Ferraras, G. L. c. 183, § 58, we need not decide how the derelict fee statute would apply to a deed that omitted the "by the line of Beach Avenue" language of its predecessor deeds.

common[-]law rule of interpretation," the judge wrote, "this description would have resulted in the inference that the Nantasket Company did not intend to convey its rights in the ways on the 1885 Plan when it conveyed the land in both Norwell Deeds." In other words, if the common-law rule applied, Norwell would not have owned a fee interest in the disputed section of Beach Avenue. The Ferraras do not argue otherwise on appeal.

The judge concluded, however, that he could not apply that common-law rule because it had been "superseded" by the rule of construction set forth in the derelict fee statute. Under that statutory rule, the judge wrote, the "by the line of Beach Avenue" language in the deeds "no longer permits" the inference that "the Nantasket Company did not intend to convey its rights" in the Beach Avenue way in the Norwell deeds. Rather, the derelict fee statute "requires the conclusion that the Nantasket Company conveyed its rights in the ways described in the Norwell deeds as shown on the 1885 Plan." "As a result," the judge concluded,

> "when Norwell conveyed lots to Gustavus Damon in 1896, which included what is now the House Lot and Beach Lot, title to the Disputed Area between them was included by operation of the Derelict Fee Statute. Thus, every conveyance of the House Lot and Beach Lot, ending with the Ferraras, has included title to the Disputed Area."

4. <u>The conveyance of the fee interest in the disputed area of Beach Avenue</u>. We disagree with the judge's application of

the derelict fee statute for a simple reason.[7]  In determining whether the derelict fee statute applies to the Ferraras' deeds, we must focus on the "instrument" that passed title to the property to the Ferraras (i.e., the 2017 deed) and ask what, if any "fee interest" the "grantor" (the Francine F. Townsend Living Trust) had in the abutting way (the disputed area of Beach Avenue).  G. L. c. 183, § 58.  See Adams v. Planning Bd. of Westwood, 64 Mass. App. Ct. 383, 387-389 (2005) (first examining ownership of fees to determine whether derelict fee statute affects rights in disputed way).

We cannot determine whether the derelict fee statute applies to the deeds at hand by retroactively applying the statutory rule of construction to the 1886 Norwell deeds.  That is because, by the time the house and beach lots were conveyed to the Ferraras in 2017, the Francine F. Townsend Living Trust did not have a fee interest in the disputed area.  Rather, the fee interest in Beach Avenue had been conveyed to another party, Eben D. Jordan, in 1887, the year after the lots were conveyed to Norwell.  The derelict fee statute, enacted eighty-four years after that, did not operate to undo that conveyance.

---

[7] We review the judge's summary judgment decision de novo. Nunez v. Syncsort Inc., 496 Mass. 706, 709 (2025).

Again, the key facts are undisputed. In 1887, the trustees of the Nantasket Company conveyed fourteen blocks of lots and streets to Jordan, by a deed (Jordan deed) expressly excepting from that conveyance the prior conveyances to Norwell -- i.e., the Norwell deeds.[8] The parties do not dispute that the various descriptions in the Jordan deed includes the disputed section of Beach Avenue. In 1913, the trustees under Jordan's will conveyed several ways, including Beach Avenue, to the town. It is from this deed that the town has title to the rest of Beach Avenue and claims title to the disputed section of Beach Avenue as well.

Accordingly, it was Jordan -- not Norwell -- to whom the trustees of the Nantasket Company conveyed the fee in the disputed section of Beach Avenue. As the judge recognized, the then existing common-law rule of construction did not support the inference that the Norwell deeds gave Norwell title to any part of that way. Rather, because the deeds described the house

---

[8] The Jordan deed identified the remaining land to be conveyed as,

> "all and singular any and every other parcel or parcels of land situated at Nantasket Beach aforesaid, the title to which is vested in us as Trustees as aforesaid, including all such parcels whether of upland, beach or flats, and whether shown as Lots on Plans or included in the locations of Streets or of the Nantasket Beach Railroad or whether strips of beach or parcels of flats except as hereinafter mentioned."

and beach lots as being "by the line of Beach Avenue," Norwell had "no title to any part" of the way "as the boundary [was] expressly limited to its side line." McKenzie, 184 Mass. at 458.

5. The Supreme Judicial Court's decision in Hobart v. Towle. The Supreme Judicial Court's decision in Hobart further shows how the common-law rule of construction applied to the Norwell and Jordan deeds. Hobart concerned a petition for registration of another parcel of land shown on the same Nantasket Company 1885 plan. See Hobart, 220 Mass. at 296-297. The petitioner sought to register a portion of her property abutting the extension of Manomet Avenue; the parties in Hobart agreed that this extension, although not depicted in the 1885 plan as a roadway, had since become a public way situated between the properties of the petitioner and the respondents. See id. at 297.

Examining the same deeds under which the trustees of the Nantasket Company conveyed out its land to Norwell in 1886 and to Jordan in 1887,[9] the Supreme Judicial Court noted that the

_____

[9] In his summary judgment decision, the judge likewise concluded that Hobart examined the same deeds under which Nantasket Company conveyed land to Norwell and Jordan. This is a reasonable conclusion based on the factual narrative describing the deeds that precedes the opinion of Hobart, 293 Mass. at 293-296.

lots of the respondent, who "derive[d] title by deed from Norwell," were described as "bound[ed] westerly by the easterly line of Manomet Avenue [as] extended." Id. Citing McKenzie, 184 Mass. at 458, the Hobart court then stated that "[i]t thus appears that the fee in the extension of the avenue, which they have since conveyed to the town of Hull, remained in the grantors" (emphasis added). Hobart, 220 Mass. at 297.

The decision in Hobart thus confirms that, under the then prevailing common-law rule of construction, the trustees of the Nantasket Company did not convey its rights in the ways on the 1885 Plan to Norwell in 1886.[10] Rather, the company retained its fee interests in those ways, including the disputed area of Beach Avenue, until the following year, when it conveyed them to Jordan. None of the subsequent conveyances of the house and

---

[10] The Ferraras dismiss Hobart as irrelevant because it "applied the common[-]law rule of deed interpretation that has been superseded by" the derelict fee statute and "would have been decided differently were it addressed today." That may be true, assuming that the same facts arose today with respect to an instrument to which the derelict fee statute actually applied. We also agree that the judge was not bound to follow Hobart insofar as the Supreme Judicial Court applied the common-law rule of construction. Stare decisis does not prevent a court from departing from a precedent based on a common-law rule when a statute has superseded that rule. Instead, the significance of Hobart is the Supreme Judicial Court's confirmation that, at the relevant times, the fee interests in the ways on the 1885 Plan had been conveyed to Jordan, then to the town. That supports the town's argument that it has owned the disputed area of Beach Avenue since 1913, and that the Francine F. Townsend Living Trust and the Ferraras never did.

beach lots included a fee interest in Beach Avenue, knowingly or otherwise.  See Rowley, 438 Mass. at 802 & n.9, 803.

6.  The inapplicability of the derelict fee statute.  As a result, the derelict fee statute has no application to this case.  Like the common-law rule of construction it superseded, the new statutory rule of construction applies only if the grantor had a fee interest in the way.  See Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 679-680 (1965), quoting Crocker v. Cotting, 166 Mass. 183, 185 (1896) (at common law, "the mention of a way as a boundary in a conveyance of land is presumed to mean the middle of the way, if the way belongs to the grantor" [emphasis added]); Adams, 64 Mass. App. Ct. at 389 ("since the [grantors] no longer held any interest in the fee of the disputed way, the derelict fee statute had no effect on the interests conveyed under the 1959 deed to [plaintiffs' predecessor in title]").  See also Trustees of Boston College v. Boston Academy of the Sacred Heart, Inc., 103 Mass. App. Ct. 83, 88 (2023) (derelict fee statute "does not apply" if grantor "did not retain any interest in [way] at the time of the conveyance").  Here, no "fee interest of the grantor in [any] way" was conveyed by the Francine F. Townsend Living Trust to the Ferraras in 2017.  G. L. c. 183, § 58.  Rather, the fee interest in the disputed area of Beach Avenue was conveyed many years earlier to Jordan, then to the town.  Nor is there any

need to quiet title to any "sundry narrow strips of land," Rowley, 438 Mass. at 803, on the boundaries to the house and beach lots. At least insofar as the derelict fee statute is concerned, the Ferraras own their lots to the side lines of Beach Avenue, and the town owns the way between them. There is no "lost" or otherwise derelict fee. See Kubic, 98 Mass. App. Ct. at 302.

The Ferraras contend that the "chain of title proffered by the Town . . . is based on the erroneous premise that the Derelict Fee Statute did not apply to the Norwell deeds." They argue that, because the house and beach lots are recorded, not registered, land, the statute "applies retroactively to govern construction of the prior deeds conveying title to those parcels" (emphasis added). They reiterate the judge's reasoning that, "by retroactive application of the Derelict Fee statute," the trustees of the Nantasket Company "could not have conveyed the Disputed Area to Jordan in 1887, and Jordan could not have conveyed it to the Town in 1913 because neither party owned it." Those purported conveyances were, in the judge's words, "a nullity."

We disagree. The derelict fee statute applies retroactively, but it is not a time machine. Consistent with its implementing legislation and subsequent amendments, we have applied the statute to instruments for recorded land executed

before the 1972 effective date.  St. 1990, c. 378, § 2;

St. 1973, c. 185, § 2; St. 1971, c. 684, § 2.  See, e.g., Adams,

64 Mass. App. Ct. at 388 (applying statute to 1957 deeds).  So

far as we can tell, however, neither we nor any other court has

applied the statute to nullify a pre-1972 conveyance of a fee in

a way executed in accordance with the then applicable common-law

rule of construction.  For one thing, such an application of the

statute would disregard its requirement that the grantor who

conveyed the property in the current deed have a fee interest in

the way.  G. L. c. 183, § 58.  The approach would also dislodge

long vested property rights, such as the town's here, and

undermine the statute's goal of promoting repose in real estate

title.  See Kubic, 98 Mass. App. Ct. at 302.[11]  It is after all

happenstance that this one strip of Beach Avenue is not

developed.  By the Ferraras' reasoning, all the roads in

Nantasket conveyed to Jordan in the Jordan deed, then to the

town by Jordan in 1913-- although paved and maintained by the

_____

[11] We do not deny that, in a different case, the derelict fee statute may apply retroactively in a way that implicates due process or other constitutional concerns, although, as a general principle, where property rights are grounded on a rule of common law, they "carr[y] with them implicit notice that they might be modified in the face of changing conditions." Nantucket Conservation Found., Inc. v. Russell Mgt., Inc., 380 Mass. 212, 217 (1980).  Our point here is that neither statutory text nor purpose supports applying the derelict fee statute in a manner that nullifies prior conveyances.

town and heavily used for traffic -- belong to the neighbors abutting them. Finally, this approach would raise novel, perhaps unanswerable questions, such as, who actually owned Beach Avenue between 1887 and 1972? And what does it mean to retroactively nullify the conveyance of this property to the town in 1913, when such conveyance was indisputably lawful at that time?[12]

---

[12] We respectfully disagree with our dissenting colleague's argument that our decision in Adams, 64 Mass. App. Ct. at 383-389, requires that the derelict fee statute be applied to nullify the conveyance of the Beach Avenue way to Jordan, then the town. Post at         . In Adams, we concluded that the defendant (Gobbi), not the plaintiffs (the Adamses), owned the fee in portions of a roadway abutting the Adamses' lot. Adams, supra at 383-384, 389, 393. Because a different party (the Coombses) owned the entire fee in the way before a 1959 exchange of deeds, we examined the extent to which the statutory rule of construction applied to those deeds in order to determine "the rights of the parties to the fee in the disputed way." Id. at 387-389. We concluded that "the derelict fee statute had no effect on the interests conveyed under the 1959 deed to" the Adamses' predecessor in title, because the Coombses separately conveyed the fee in the disputed way to Gobbi's predecessor in title. Id. at 388-389. That reasoning supports, not undermines, our holding here. Nor does our holding conflict with the application of the derelict fee statute in Adams to deeds that predated its enactment. See post at         . We acknowledge that the statute generally applies to deeds executed before 1972 and that, even where a property has been subsequently conveyed, language in a predecessor deed may bear on how the statute applies now. See Conway, 102 Mass. App. Ct. at 779. We do not believe, however, that the statute requires us in this case to consider only the 1886 Norwell deeds, ignore that the Francine F. Townsend Living Trust conveyed no fee interest in Beach Avenue to the Ferraras in 2017, or pretend that the conveyance of the fee in that way to the town never happened.

In the end, we conclude that the Legislature intended the derelict fee statute to apply in situations where the grantor, knowingly or not, failed to convey a fee interest it had in the way, see Rowley, 438 Mass. at 803-804, but not where the fee interest was conveyed to a different party years earlier.[13]

7. Change in the town's position in reliance on Hobart. Lastly, even if the derelict fee statute could otherwise be applied to undo the express grant to Jordan of the "Streets" retained by the Nantasket Company and the subsequent conveyance to the town, we would still conclude that the town owns the fee interest in the disputed area and the rest of Beach Avenue.[14] That is because the derelict fee statute does not apply "to the extent that any person or his predecessor in title has changed his position as a result of a decision of a court of competent jurisdiction." St. 1971, c. 684, § 2. Accord St. 1990, c. 378, § 2; St. 1973, c. 185, § 2.

---

[13] We note that "'the derelict fee statute pertains only to the question of ownership of the fee' in a way; it is not concerned with the existence or nature of any easement rights there." Kubic, 98 Mass. App. Ct. at 302, quoting Adams, 64 Mass. App. Ct. at 389.

[14] To be clear, we do not address the Ferraras' claim for adverse possession, which the judge did not reach in his summary judgment decision.

The Jordan deed specifically conveyed the streets at the time retained by the grantor, the trustees of the Nantasket Company. It conveyed,

> "all and singular any and every other parcel or parcels of land situated at Nantasket Beach aforesaid, the title to which is vested in us as Trustees as aforesaid, including all such parcels whether of upland, beach or flats, and whether shown as Lots on Plans or included in the locations of Streets or of the Nantasket Beach Railroad or whether strips of beach or parcels of flats except as hereinafter mentioned" (emphasis added).

As discussed, in 1915, applying the common-law rule of construction that applied prior to enactment of the derelict fee statute, the Supreme Judicial Court concluded that, after the Norwell deeds conveyed the lots, including the house and beach lots at issue here, "the fee in" the roads described in the Jordan deed, which "they have since conveyed to the town of Hull, remained in the grantors." Hobart, 220 Mass. at 297. In reliance on this decision of a court of undoubtedly competent jurisdiction, the town "changed [its] position," St. 1971, c. 684, § 2, with respect to the roads conveyed by Jordan, including Beach Avenue, by paving and maintaining them for many years.

In addressing this argument, the Ferraras argue, as they did below, that there is no evidence of a change in position by the town with respect to the disputed area. That argument persuaded the judge, who wrote, "I cannot conclude that the

[t]own has changed its position relative to the Disputed Area as a result of the finding in Hobart." But the question is not whether the town changed its position with respect to the disputed area, which is not a separate parcel of land or even a separate road. It is whether the town changed its position with respect to the land granted it in the deed from Jordan, i.e., all the Nantasket Beach ways conveyed to Jordan in the Jordan deed and then the town. Indeed, it should be obvious that one challenging ownership of a way under the change of position exception cannot eliminate the rights of one who relied on a prior court decision by selectively challenging ownership only of bits and pieces of a way that are not developed.

The maintenance and paving of roads conveyed to the town by Jordan amounts to a change of position by the town in reliance on the Supreme Judicial Court's decision in Hobart. The land conveyed by Jordan, including the disputed area, thus falls within the change of position exception in the statute, and would be owned by the town regardless of whether the statute was otherwise applicable.[15]

---

[15] There is also an argument not raised here that the change of position exception is even broader, something we do not decide. As described in note 4, supra, during the legislative process the current exception ("to the extent that any person or his predecessor in title has changed his position as a result of a decision of a court of competent jurisdiction") replaced a clause that excluded instruments where "any person, or his

Conclusion.  The final judgment entered on August 15, 2024, is vacated and we remand the matter for proceedings consistent with this opinion.

So ordered.

---

predecessor in title, has changed his position in reasonable reliance on different rules of construction determined by the Supreme Judicial Court prior to such change."  1971 House Doc. No. 1744.  The change in language may have been intended to broaden the exception to include reliance on decisions of courts other than the Supreme Judicial Court and decisions not based on the prior rule of construction, while leaving in place the protection of the original version that is not limited to parcels that happen to have been the subject of previous court decisions.  If that were the case, the town might be entitled to the benefit of the exception even without Hobart.

D'ANGELO, J. (dissenting).  In a well-written decision, the majority reduces a complex web of facts into a distilled and clear result:  John Ferrara, II, and Kathleen Ferrara (the Ferraras) do not have title because fee in the disputed way was conveyed to Jordan (and ultimately the town of Hull) in 1887, and thus any subsequent purported conveyances of that fee in the Ferraras' chain of title are of no consequence.  <u>Ante</u> at      .  However, this result ignores the Legislature's mandate that the derelict fee statute must be applied retroactively unless one of the statutory exceptions applies.  G. L. c. 183, § 58; St. 1971, c. 684, § 2.

The majority's straightforward analysis raises an equally straightforward question:  why did the 1886 conveyance to Norwell (which predates the Jordan conveyance and which, on application of the derelict fee statute, conveyed fee in the disputed way) not create the exact opposite result and ground ownership of the fee in the Ferraras?  The majority bypasses this question in order to reach a statutory interpretation that is a departure from the statute's plain text, and in so doing avoids the long-standing doctrine typically relied on to resolve questions of retroactive application.  For these reasons, I respectfully dissent.

There appears to be no disagreement that, if the derelict fee statute does apply to the Norwell deeds, those deeds

conveyed fee interest in the disputed area to Norwell and ultimately to the Ferraras.  It is undisputed that the Norwell deeds predate the Jordan deed; that at the time of the Norwell conveyance, the grantor held title to the disputed area; that the deeds conveyed the beach lot and the house lot, both abutting the disputed area, which is a way; that the deeds evidence no "different intent" sufficient to rebut the presumption that the grantor intended to convey title to the center line of the way, G. L. c. 183, § 58; and that the Legislature directed that courts apply the statutory presumption retroactively, St. 1971, c. 684, § 2.

Nevertheless, the majority adopts a backwards-facing approach in resolving whether to apply this presumption retroactively, beginning with the instrument passing title to the Ferraras in 2017 and assessing whether the grantor possessed a fee interest in the disputed area; the majority finds that no such interest was held, because, working backwards to 1887, "the fee interest in [the disputed area] had been conveyed to another party, Eben D. Jordan."  Ante at      .  But this approach stands in direct contrast to the one adopted by this court in Adams v. Planning Bd. of Westwood, 64 Mass. App. Ct. 383, 383-389 (2005), the opinion the majority cites for the proposition that the court must "first examin[e] ownership of fees to

determine whether [the] derelict fee statute affects rights in disputed way[s]." Ante at        .

In Adams, we addressed ownership of the fee interest in a disputed way amongst the defendant Gobbi and three neighbors abutting the way.  64 Mass. App. Ct. at 383-386.  As the majority recognizes, ante at        , the Adams court began by determining which party initially held title to the disputed way, supra at 387-389.  Our court noted that the owners of several lots abutting the way exchanged deeds in 1957, and so it systematically reviewed each deed in chronological order, applying the derelict fee statute where the grantor, at the time of the deed, held title to the disputed way.  Id. at 387-388. As these deeds predated enactment of the statute by fifteen years, they were framed in reliance on the long standing common-law presumption in effect at that time; nevertheless, it was the statute that guided the court's determinations.  See id. at 388 ("The effect of that deed, under the derelict fee statute, was to convey to the Franklins the fee in the way abutting that strip, to the centerline of the way. . . .  By operation of the derelict fee statute, the deed passed to the Mullenses the interest of the Coombses in the fee of the way abutting lot 2").

After tracing title of the way step-by-step through the chain of conveyances, the court arrived at the conveyance to Gobbi's predecessor in interest and from which Gobbi traced his

purported title.  Id. at 388-389.  Thus, only after the court had analyzed prior deeds in compliance with the retroactive effect of the derelict fee statute was it positioned to determine whether the grantor still possessed its fee interest at the time of the last conveyances.  Id.

Applying this approach to the instant case is both simple and logical.  In 1885, the Nantasket Company (Nantasket) held a fee simple interest over a wide swath of land that included the house lot, the beach lot, and the disputed area between them. In 1886, Nantasket conveyed the house lot and the beach lot to Norwell; the retroactively applicable statutory presumption dictates that this conveyance also included the disputed area. Thus, Nantasket's conveyance to Jordan in 1887 (a conveyance that expressly excluded land previously conveyed to Norwell) could not include the disputed area.  Jordan's subsequent conveyance to Hull likewise could not include the disputed area, and the fee interest of that area transferred from Norwell through several successors in interest until landing with the Ferraras in 2017.

Instead, the majority takes the unorthodox path of working backwards, asserting that the 2017 conveyance to the Ferraras could not have included fee to the disputed area because that fee was conveyed to Jordan in 1887, reasoning that "the Legislature intended the derelict fee statute to apply in

situations where the grantor, knowingly or not, failed to convey a fee interest it had in the way . . . but not where the fee interest was conveyed to a different party years earlier."  Ante at      .  But this reasoning is paradoxical when used to justify not applying the statute to the Norwell deeds, a conveyance "where the grantor, knowingly or not, failed to convey a fee interest it had in the way," with the result being that "the fee interest was conveyed to a different party [Norwell]" a year before the conveyance to Jordan.  See ante at      .  It stands to reason that applying the statute to the Norwell conveyance is the precise set of circumstances to which the Legislature intended the statute to apply.

Furthermore, I note that the Legislature has mandated retroactive application of the derelict fee statute but for two specific circumstances:  land registered prior to enactment of the statute and land with respect to which "any person or his predecessor in title has changed his position as a result of a decision of a court of competent jurisdiction."  St. 1971, c. 684, § 2.  The inclusion of those two exceptions counsels against intuiting a third.  See Commonwealth v. Perry, 455 Mass. 1010, 1011 (2009) ("a general tenet of statutory construction is that the statutory expression of one thing is an implied exclusion of other things omitted from the statute" [quotation and citation omitted]).

But even more directly, the derelict fee statute's specific language makes clear the Legislature's intent, contrary to the majority's view. "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent" (citation omitted). <u>Matter of E.C.</u>, 479 Mass. 113, 118 (2018). The majority asks, "[W]hat does it mean to retroactively nullify the conveyance of this property to the town in 1913, when such conveyance was indisputably lawful at that time?" <u>Ante</u> at        . Respectfully, the Legislature enacted a statute designed to supersede a common-law presumption, expressly providing that describing a lot as "bounding by a side line," G. L. c. 183, § 58, a phrase that had long shown an intent <u>not to convey</u> title in the way, see <u>Rowley</u> v. <u>Massachusetts Elec. Co</u>., 438 Mass. 798, 804 (2002), would now no longer show such an intent. The inescapable conclusion is that, by requiring that this new interpretation be applied retroactively, the Legislature must have expected that formerly "indisputably lawful" conveyances of interests in ways would be called into question and potentially "retroactively nullif[ied]."[1] <u>Ante</u> at       . This result cannot be in

---

[1] Indeed, as the majority concedes, "as a general principle, where property rights are grounded on a rule of common law, they 'carr[y] with them implicit notice that they might be modified in the face of changing conditions.'" <u>Ante</u> at        , quoting

contravention of legislative intent.  See <u>Prudential Ins. Co. of Am</u>. v. <u>Boston</u>, 369 Mass. 542, 547 (1976) ("It is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation").

A final pitfall to the majority's approach is that it is an end run around the extant procedure for challenging retroactive application of a statute.  "[(R)etroactive] statutes which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional" as violating due process (quotation and citation omitted).  <u>Nantucket Conservation Found., Inc.</u> v. <u>Russell Mgt., Inc</u>., 380 Mass. 212, 215 (1980).  Here, the majority sua sponte constructs an exception to retroactive application of the statute after musing that "perhaps unanswerable questions" might otherwise arise concerning the displacement of long standing property interests.  <u>Ante</u> at      .  Yet no party here challenged the constitutionality of application of the statute in these circumstances, and therefore no briefing was submitted on that issue.

---

<u>Nantucket Conservation Found., Inc</u>. v. <u>Russell Mgt., Inc</u>., 380 Mass. 212, 217 (1980).

Critically, challenges to retroactivity implicate a "test of reasonableness" (citation omitted) that the majority has seemingly avoided. Nantucket Conservation Found., Inc., 380 Mass. at 215. That test demands that the challenging party "carry a heavy burden" of proving the inequity of retroactive application, and "[e]very rational presumption is indulged in favor of the validity of the statute" (quotation and citation omitted). Id. at 215-216. That burden has neither been alleged nor met, and the majority employs its own presumption that the Legislature did not intend the statute to apply as written.

Lastly, Hull's proclaimed reliance on Hobart v. Towle, 220 Mass. 293, 294-298 (1915), cannot be evidenced by claims of paving and maintaining the roads conveyed by Jordan. See ante at      . Paving and maintaining public roads are municipal activities independent of fee ownership of the soil under those ways. See McHugh v. Boston, 173 Mass. 408, 409 (1899) ("The town, in the distribution of the public burdens, is bound to maintain that portion of the highway which is within its territorial limits," regardless of whether it "owns the soil" [emphases added; citation omitted]). It cannot be that Hull, which presumably has paved and maintained public roads within its limits regardless of fee interests, can claim that doing so on the Jordan roads somehow evinces a unique reliance on the dicta of a one hundred year old decision.

Regardless of our opinions of the wisdom of the derelict fee statute and the benefits gained by its implementation, the statute compels finding that the Norwell deeds conveyed the disputed area and that the Ferraras now hold title.  The statute is clear.  To overrule the common law, the Legislature's "intent to do so [must be] clearly expressed" (quotation and citation omitted), Brear v. Fagan, 447 Mass. 68, 72 (2006), and it was here.  And to apply such a change retroactively, the Legislature's "intent [must be] clearly shown," Nantucket Conservation Found., Inc., 380 Mass. at 214, and it was here. The Legislature materially changed a long-standing presumption with retroactive effect; it cannot be that the disruption of property rights resulting directly from that change is contrary to the legislative intent.  Thus, "[t]he sole issue is whether the statute falls within the legislative power to enact, not whether it comports with a court's idea of wise or efficient legislation."  Boston v. Keene Corp., 406 Mass. 301, 305 (1989). As there has been no challenge raised to the constitutionality of the statute's retroactive application here, we must simply accept the authority of the Legislature, apply the statute, and affirm.